The STATE of Ohio, Appellee,

v.

CHANEY, Appellant.

[Cite as *State v. Chaney*, 169 Ohio App.3d 246, 2006-Ohio-5288.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–04–55.

Decided Oct. 10, 2006.

Jonathan G. Stotzer, for appellant.

Kenneth Egbert Jr., Seneca County Prosecuting Attorney, and Timothy J. Hoover, for appellee.

---

BRYANT, Presiding Judge.

{¶ 1} The defendant-appellant, Daniel H. Chaney, appeals the judgment of the Seneca County Common Pleas Court, convicting him of two counts of rape and one count of gross sexual imposition based on a jury's finding of guilt.

{¶ 2} Beginning on September 9, 1995, and ending on September 9, 2002, Chaney engaged in a continuing course of conduct, which included digitally and orally penetrating his stepdaughter's vagina, groping and licking her breasts, and reaching into her pants and rubbing her genital area while masturbating himself. The victim, B.C., was approximately six years old when the abuse began and was approximately 12 years old when the abuse ended. The abuse occurred while B.C.'s mother was at work on the midnight shift.

{¶ 3} On June 23, 2004, the Seneca County Grand Jury indicted Chaney on two counts of rape, violations of R.C. 2907.02(A)(1)(b)(2), felonies of the first degree, and one count of gross sexual imposition, a violation of R.C. 2907.05(A)(1)(4), a felony of the third degree. On November 5, 2004, the trial court held a motion hearing to address several issues. The court granted Chaney's motion in limine, which prevented the state of Ohio from introducing evidence of a 1990 conviction for public indecency and other pending charges. The court overruled Chaney's motion for an order allowing him to ask B.C., "Have you ever made a false accusation of rape?" Chaney's request was based on a partially recanted allegation made in a Seneca County Common Pleas Court case. In that case, B.C. had accused the defendant of raping her. At a later date, however, B.C.

partially recanted her accusation, advising "the Assistant County Prosecutor that sexual conduct did not happen with [the defendant], but sexual contact did occur."

{¶ 4} A jury trial was held on November 8, 9, and 10, 2004. Chaney twice renewed his motion to ask B.C. about prior false allegations of rape, but the trial court overruled the motions. The jury found Chaney guilty of each charge, and the trial court entered judgment on November 19, 2004. Chaney appeals the trial court's judgment and subsequent sentencing entry and asserts the following assignments of error:

The trial court erred in denying defense counsel the ability to ask the accuser if she had ever recanted an accusation of rape or sexual conduct.

The trial court erred in denying defense counsel's renewed request for the ability to ask the accuser if she had ever recanted an accusation of rape or sexual conduct after the State had bolstered the credibility of the accuser by asking her mother about the accuser's sexual activities with other men, and the outcome the accuser's accusations against of those men, which result was testified to as being a five year prison sentence.

The trial court erred in not reconsidering defense counsel's request for the ability to ask the accuser if she had ever recanted an accusation of rape or sexual conduct after the court's in camera review of the two disclosed accuser's prior statements disclosed [sic] that the accuser had in the past told a human services worker that Dan Chaney had not touched her.

The trial court erred by not granting the defense motion for mistrial after closing argument after two witnesses, in the presence of the jury, made a show of leaving the court during defense's closing argument in tears; and a third person, purportedly a State's witness, also in the presence of the jury, interrupted the defense's closing by standing and declaring in violation of the court's in limine order that there were other victims.

The verdict must be overturned because the defendant was denied a fair trial by the failure of the State to disclose all prior statements of the accuser to the Court and providing them to the Court for the Court's in camera review of prior statements of the accuser for inconsistencies.

The cumulative effect of the Court's refusal to allow the defendant to ask the accuser if she had recanted a prior accusation, prosecutorial failures on three occasions to disclose statements of the accuser regarding accusations she recanted, and/or denied multiple witness misconduct, and spectator misconduct, and the inadequacy of the trial court's ability to review prior statements of the accuser for inconsistencies due to prosecutorial misconduct in failing to disclose all prior statements of the accuser to the trial court during the review process denied the defendant a fair trial.

The verdict of the jury in this case is against the manifest weight of the evidence and must be reversed.

■ {¶ 5} Because the first three assignments of error are essentially the same, we will consider them together. A trial court has discretion to determine whether a witness may be asked on cross-examination about specific acts of conduct, which are "clearly probative of truthfulness or untruthfulness." Evid.R. 608(B). Therefore, absent an abuse of discretion, the trial court's decision will not be disturbed on appeal. *Martin v. Martin* (1985), 18 Ohio St.3d 292, 18 OBR 342, 480 N.E.2d 1112. An " 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. Therefore, we must determine whether the trial court abused its discretion when it overruled Chaney's motions to ask B.C. about prior false accusations of rape.

■ {¶ 6} Ohio's Rape Shield Law prohibits the use of any evidence concerning the victim's sexual activity, unless it is offered to show "the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender." R.C. 2907.02(D). Additionally, the trial court must find the evidence material to a fact in issue, and the probative value must outweigh the prejudicial effect. Id. However, the Ohio Supreme Court has allowed cross-examination concerning a rape victim's prior false allegations of rape for impeachment purposes if the question relates to credibility rather than sexual activity. *State v. Boggs* (1992), 63 Ohio St.3d 418, 421, 588 N.E.2d 813. Pursuant to *Boggs*, the cross-examiner must be allowed to ask the threshold question of whether a rape victim has made prior false accusations of rape. Id. at 421, 588 N.E.2d 813. If the victim admits a prior false accusation, the trial court must perform an in camera review to "ascertain whether sexual activity was involved and, as a result, would be prohibited by R.C. 2907.02(D), or whether the accusation was totally unfounded and therefore" subject to further inquiry on cross-examination. Id. at 421–422, 588 N.E.2d 813. However, if the victim denies the prior false accusation, the cross-examiner may not prove the matter with extrinsic evidence. Id. at 422, 588 N.E.2d 813.

{¶ 7} In this case, the trial court abused its discretion by overruling Chaney's motion to ask B.C. whether she had made prior false accusations of rape. The record clearly shows that Chaney's counsel understood the perimeters of *Boggs*. The trial court reviewed *Boggs* and overruled three requests to question B.C. concerning any prior false allegations. The first motion was made during the pretrial motion hearing held on November 5, 2004. At that time, the trial court performed an in camera review of the partial recantation, although it was not required to do so unless B.C. admitted a prior false accusation. The second

motion was made during trial after the victim's mother, Esther, and a third person read a transcript of a recorded telephone conversation between Esther and Chaney. The transcript revealed that B.C. had been sexually abused by two other men, and the state elicited testimony that one of those men had been sentenced to five years in prison as a result of the abuse. The third motion was made after the jury heard evidence that B.C. had told a counselor that Chaney had never touched her.

{¶ 8} The only evidence presented by the state was through direct testimony; therefore, B.C.'s credibility was a key aspect of the case. Although other witnesses testified, B.C.'s and Esther's testimony was instrumental in proving the elements of the state's case. Chaney possessed evidence that B.C. had partially recanted a rape allegation against another defendant. If Chaney had been permitted to ask the question, "Have you ever made a false accusation of rape?" and B.C. had answered "yes," regardless of whether further questioning was permitted, B.C.'s credibility may have been called into question by the jury. If B.C. had answered "no," Chaney would have been bound by that answer.

{¶ 9} Additionally, "[s]everal legitimate state interests are advanced" by the Rape Shield Law. *State v. Gardner* (1979), 59 Ohio St.2d 14, 17, 13 O.O.3d 8, 391 N.E.2d 337. The objective of the Rape Shield Law is to (1) guard the victim's privacy, (2) discourage putting the victim on trial, and (3) encourage rape victims to report crimes. Id. at 17–18, 13 O.O.3d 8, 391 N.E.2d 337. In this case, the State introduced evidence concerning B.C.'s past sexual activity, including evidence that B.C. had been abused by two other men, at least one of whom was serving a prison term as a result. We believe that this testimony "opened the door" *at least* so far as to allow Chaney to inquire as to whether B.C. had made false allegations of rape. Therefore, we hold that the trial court abused its discretion by repeatedly overruling Chaney's motions to question B.C. pursuant to *Boggs.* The first, second, and third assignments of error are sustained.

{¶ 10} The fourth assignment of error relates to spectators' emotional outbursts during closing arguments. The Ohio Supreme Court has held that a trial judge is in the best position to observe a jury's reaction to an emotional outburst. *State v. Bradley* (1965), 3 Ohio St.2d 38, 40–41, 32 O.O.2d 21, 209 N.E.2d 215. The trial court's decision will not be disturbed unless evidence on the record "clearly and affirmatively" shows "that the jury was improperly affected" so that the defendant was prejudiced. Id. at 41, 32 O.O.2d 21, 209 N.E.2d 215.

{¶ 11} During closing arguments for the defendant, B.C. and Esther left the courtroom in tears, and a male spectator stood up and stated, "[B.C.] wasn't the only victim." The trial judge had the man removed from the courtroom and

instructed the jury to "disregard anyone making any comment other than the attorneys." In chambers, the judge said that he had not heard the spectator's comment, that he had removed the man from the courtroom, and that he had instructed the jury appropriately. The trial judge was in the best position to observe the jury's reactions, and the record does not "clearly and affirmatively" show that the jury was affected by either the spectator's comment or B.C.'s and Esther's emotional departure from the courtroom. The fourth assignment of error is overruled.

{¶ 12} The fifth assignment of error relates to the state's failure to disclose exculpatory evidence to the defendant and to the trial court upon request. In conjunction with *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, Crim.R. 16(B)(1)(f) requires the state, upon motion from the defendant, to disclose "all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment." The state must disclose favorable and material evidence, even if it is not requested, and the state's good or bad faith in meeting this standard is irrelevant. *Kyles v. Whitley* (1995), 514 U.S. 419, 432, 115 S.Ct. 1555, 131 L.Ed.2d 490.

{¶ 13} Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley* (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481. The defendant must show that the failure to disclose evidence "undermines confidence in the trial's outcome" because the evidence would have "cast the entire case in a new light." *Kyles*, 514 U.S. at 434–435, 115 S.Ct. 1555, 131 L.Ed.2d 490. The court must review the undisclosed evidence collectively to determine materiality. Id. at 436, 115 S.Ct. 1555, 131 L.Ed.2d 490.

{¶ 14} The record reflects that Chaney's trial counsel requested discovery on August 30, 2004. Chaney contends the state failed to provide the transcript from a January 7, 2003 interview between Detective Kevin Reinbolt and B.C., which was material for impeachment. However, the state produced the report during trial, and the court held an in camera review at that time. The report contained inconsistent statements made by B.C., which were also inconsistent with her trial testimony. In the report, B.C. claimed that Chaney had never touched her, but she also stated that she failed to report him because she wanted to protect him. On direct examination, B.C. testified that she did not report Chaney because he had threatened to harm Esther. The court found that the statements were inconsistent, and defense counsel had an opportunity to review the document and cross-examine B.C. concerning any inconsistency.

{¶ 15} The other piece of evidence the state failed to disclose was a report prepared by B.C.'s counselor, Daniel Cruikshank, Ph.D., which the state relied upon during sentencing. Chaney has failed to show how the report would be material to his case. The portions of the report read into the record reveal statements that are damaging to Chaney. In evaluating Dr. Cruikshank's report and the January 7, 2003 interview report, we find that the evidence was not material in that it does not undermine confidence in the jury's verdict. The fifth assignment of error is overruled.

{¶ 16} Having sustained the first, second, and third assignments of error, we find that the sixth and seventh assignments of error are rendered moot. The judgment of the Seneca County Common Pleas Court is reversed. This cause is remanded for further proceedings.

Judgment reversed<br>and cause remanded.

ROGER, J., concurs.

CUPP, J., dissents.

CUPP, Judge, dissenting.

{¶ 17} Because I disagree with the majority opinion's disposition of assignments of error one, two, and three, I must respectfully dissent. I am unable to conclude that there was error in the trial court's refusal to allow the defendant to ask the victim whether she had made any prior false allegations of rape under the circumstances presented by this case.

{¶ 18} The Ohio Supreme Court has held that "where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an *in camera* hearing to ascertain whether sexual activity was involved and, as a result, [cross-examination on the accusation] would be prohibited by R.C. 2907.02(D), or whether the accusation was totally unfounded and therefore could be inquired into on cross-examination pursuant to Evid. R. 608(B)." *State v. Boggs* (1992), 63 Ohio St.3d 418, 421–422, 588 N.E.2d 813. The Ohio Supreme Court has further stated, "When the defense seeks to cross-examine on prior false accusations of rape the burden is upon the defense to demonstrate that the accusations were totally false and unfounded." Id. at 423, 588 N.E.2d 813.

{¶ 19} In *Boggs*, the Ohio Supreme Court remanded the case with the following instructions:

In the present case, an *in camera* hearing was held but no inquiry was made as to the nature of the prior accusation, that is, whether the prior accusation was

based on sexual activity or was totally unfounded. Since no testimony concerning the alleged prior false rape accusation was admitted, and none was received during the rape shield hearing conducted before trial, we cannot, on this record, determine whether the evidence offered by the defense was properly excluded as involving sexual activity and thus protected by the rape shield statute. Moreover, the trial judge must in the first instance determine whether the accused has met his burden of establishing that the victim's prior accusations were clearly unfounded. We therefore remand this case to the trial court to conduct an *in camera* hearing consistent with this opinion to make the necessary determinations.

Id. at 424, 588 N.E.2d 813.

{¶ 20} In the present case, the defense raised through a motion in limine the issue of whether Chaney could, at trial, ask the victim about prior false accusations. At the hearing on the motion in limine, the only information offered by the defense on the issue was a response provided by the prosecutor's office through continuing discovery to the defendant that the victim had changed an accusation she had made in another case against a different person. According to the prosecutor, the victim partially recanted her accusation made in another criminal trial by notifying the assistant prosecutor "that sexual conduct did not happen with [the defendant] but that sexual contact had occurred." No other evidence was offered by the defendant regarding any allegedly false accusations by the victim.

{¶ 21} However, under the Ohio Revised Code, sexual activity is defined as "sexual conduct or sexual contact, or both." R.C. 2907.01(C). Because the victim still maintained that sexual contact had occurred and because no other evidence was offered, the defendant failed to show that the victim made a totally false and unfounded accusation of sexual activity. Without showing that there existed a totally false prior accusation of sexual activity (and thus, that there had been no sexual activity), any further cross-examination of the victim about the prior accusation would have involved sexual-activity evidence that is barred under Ohio's Rape Shield Laws.

{¶ 22} While the trial court's procedure differed from the outlined procedure in *Boggs,* the difference occurred because the defense initially raised the issue of prior false accusations through a motion in limine rather than through the cross-examination of the victim. Here, the trial court resolved the issue through the motion in limine, and consequently, the in camera hearing required in *Boggs* had, essentially, already been held.

{¶ 23} The majority opinion also concludes that the prosecution "opened the door" to ask the question whether the victim had made a prior false accusation of rape.

{¶ 24} At trial, the prosecution had a transcript of a recorded telephone conversation between Chaney and the victim's mother, Esther, read to the jury. The transcript mentioned that two men, known as Dariano and Etherton, had sexually abused B.C. The prosecution also asked Esther a few questions regarding Dariano and Etherton. Esther testified that Etherton was serving a prison term. Chaney did not object to the questions when they were asked, but after the jury was dismissed for the day, the defense argued that the prosecution had "opened the door" to questions about the victim's past sexual abuse allegations.

{¶ 25} The trial court held that the prosecution "opened the door" for the defense to question Esther about prior sexual abuse allegations involving Dariano and Etherton. However, the trial court did not allow the defense to ask questions regarding the person whom the partially recanted sexual abuse allegation involved.

{¶ 26} I would hold that the trial court did not abuse its discretion in limiting the defense to asking Esther questions regarding Dariano and Etherton. Moreover, I do not believe that the prosecution "opened the door" to the question whether the victim had made a prior false allegation of sexual abuse when the evidence before the trial court demonstrated not that it was wholly false, but rather that the allegation still involved sexual activity of some nature.

{¶ 27} I would hold, therefore, that the trial court did not commit error by refusing to permit the defendant to ask the victim at trial the threshold question of whether she had made a prior false accusation because the issue had already been the subject of the trial court's review at the hearing on the motion in limine.