IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25794 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-2491 |
| v. | : | |
| | : | |
| JOSEPH M. HALL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · ·

O P I N I O N

Rendered on the 16th day of May, 2014.

· · · · · · · · · ·

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. #0012093, 7821 North Dixie Drive, Dayton, Ohio 45414
      Attorney for Defendant-Appellant

· · · · · · · · · · · ·

HALL, J.,

{¶ 1}     Joseph Hall appeals his conviction for rape. Because Hall's attempt to cross-examine the victim about alleged prior false accusations of sexual abuse made by her did

not result in a *Boggs* hearing (*State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992)) we reverse and remand the case for further proceedings.

## I. FACTS

{¶ 2}    "Sara"[1] accused Hall of raping her when she was 11 years old. A nationwide arrest warrant was issued for Hall, and the U.S. Marshals Service tracked him to New York state and arrested him. He was indicted on one count of rape (under 13 years of age). A jury found Hall guilty after hearing testimony from, among others, Sara herself; Dr. Lori Vavul-Roediger, the physician who examined Sara; "Jane,"[2] Sara's sister; and Sara's mother.

{¶ 3}    Sara testified that early one summer morning in 2007 she walked into the kitchen of her house to get a glass of Kool-Aid. Her mother had already left for work and her older sister Jane was still in bed. Hall, her mother's then boyfriend who had recently moved in, found Sara alone in the kitchen. He proceeded to rape her on the floor between the kitchen table and the microwave stand. Sara told Hall that it hurt (she later discovered that she was bleeding) and tried to push him away, but he continued, telling her, "'It'll be okay; it'll feel better soon.'" (Tr. 198). When it was over, Hall warned Sara that if she told anyone about what he had done to her, he would go to jail for a "really long time." (*Id*. 199). This scared Sara.

{¶ 4}    Sara said nothing for four years. But in early 2011 Hall made a crude pass at her. So one evening soon after, Sara followed her mother into the garage and told her what Hall had done four years earlier. Sara's mother immediately called Hall into the garage and made Sara repeat the accusation to him, and then together they questioned Sara. Sara's mother did not

---

[1] We use this pseudonym to protect the identity of the minor victim.

[2] This is also a pseudonym.

believe Sara, telling her that her story kept changing. So Sara's mother did not do anything and continued her relationship with Hall. Not long after, Sara's mother and Hall were secretly married–they did not even tell Sara or Jane. Sara's mother and Hall announced that they were moving to Virginia. But they lied. In fact, they intended to move, and did move, to Texas. Sara and Jane stayed in Ohio, and Sara went to live with their father.

{¶ 5} Jane was over one evening, and their father asked the girls if Hall had ever sexually abused them. At first Sara denied that he had, but Jane, who had overheard Sara tell their mother what Hall had done, urged Sara to tell their father what had happened. Sara relented. The next day, the father reported the crime to the Huber Heights police, who arranged for Sara to be taken to CARE House (a center for child victims of abuse) and then Dayton Children's Medical Center for examination.

{¶ 6} Dr. Lori Vavul-Roediger examined Sara and testified at trial as an expert witness. Dr. Vavul-Roediger is a member of the American Academy of Pediatrics, the Ohio Chapter of the American Academy of Pediatrics, the Ohio Chapter of the Section on child-abuse pediatrics, and the Alpha Omega Alpha Honor Medical Society. She is also a member of the Ray Heifer Society, a national honor society for child-abuse pediatricians, and the American Professional Society on the Abuse of Children. Dr. Vavul-Roediger is board certified in the fields of general pediatrics and child-abuse pediatrics, has evaluated thousands of children and adolescents for possible sexual abuse or sexual maltreatment, and has testified roughly one hundred times as an expert in general pediatrics and child-abuse pediatrics. Hall did not object to permitting Dr. Vavul-Roediger to testify in the present case as an expert in the fields of child pediatrics and sexual-abuse diagnosis.

{¶ 7} Dr. Vavul-Roediger testified that she asked Sara about how someone first found out what had happened with Hall. "'I first told my mom about what happened with Joe * * *,'" Sara told her, "'[but] [m]y mom didn't believe me; she called me a liar.'" (Tr. 167). Sara told Dr. Vavul-Roediger that she "'still feel[s] like it is all [her] fault.'" (*Id.*). Sara also told the doctor that she was afraid to tell someone sooner because she had been told about–threatened with–what the consequences to Hall would be. Dr. Vavul-Roediger testified that the only abnormal finding from her physical examination of Sara was a healed tear on her hymen. The doctor explained that the tear indicates "prior penetrating or blunt force trauma to the hymen." (Tr. 177). But she could not say when the tear occurred—only that it had not occurred within the previous week. It was Dr. Vavul-Roediger's opinion that the tear is "consistent with this child's disclosure of penile vaginal penetration." (Tr. 178). The doctor said that her diagnosis is based on Sara's disclosures, quoting her written medical report as saying that "'based on [Sara]'s disclosure, a diagnosis of sexual maltreatment is warranted.'" (Tr. 182).

{¶ 8} Jane and Sara's mother testified for the defense. Jane said that it was hard for Sara to tell the truth. Jane also said that on the evening that Sara told their mother that Hall had raped her, Sara and her mother had been fighting about Sara's boyfriend. Jane said that Sara always had a good relationship with Hall and that Sara even worked for him one summer. Jane admitted that it was possible that Hall and Sara could have been alone in the kitchen in the early morning after their mother had gone to work.

{¶ 9} Sara's mother testified that on the day that Sara first told her what had happened Sara was angry because she (Sara's mother) would not let Sara attend a basketball game with her friends. Sara pouted for a while in her room, the mother said, and after dinner followed her into the garage, where she made her accusation. About the move to Virginia, Sara's mother admitted

that she lied to everyone. She explained that the lie was necessary to protect Hall from an unidentified colleague here who was out to ruin him. Sara's mother also admitted that the day that she and Hall found out that the U.S. Marshals were looking for Hall, they left their Texas house and went to a hotel room. The next day, said Sara's mother, she returned to Ohio. Hall was supposed to meet up with her after he finished a job, but he never showed up. For four months, she did not know where he was until a New York detective called and told her that they had him in custody.

## II. ANALYSIS

{¶ 10}   Hall presents four assignments of error for review. The first alleges that the trial court erred by not allowing him to cross-examine Sara about prior false accusations of sexual abuse that she had made. The second alleges that trial counsel rendered Hall ineffective assistance. The third alleges prosecutorial misconduct. And the fourth assignment of error alleges that the jury's verdict is contrary to the manifest weight of the evidence.

### A. Cross-Examination on Prior False Accusations of Sexual Abuse

{¶ 11}   Hall had reason to believe that Sara had made prior false accusations of sexual abuse, which would show her character for untruthfulness. Hall's counsel attempted  to ask her about these accusations during cross-examination, but the trial court prohibited him from doing so. The first assignment of error alleges that this is error.

{¶ 12}   "Evid.R. 608(B) allows, in the trial court's discretion, cross-examination on specific instances of conduct 'if clearly probative of truthfulness or untruthfulness.'" *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992), paragraph one of the syllabus. The Ohio Supreme Court said in *Boggs* that a defendant may cross-examine a rape victim about a prior

false accusation of rape, under Evid.R. 608(B), *if* the accusation does not involve any "sexual activity," evidence of which is prohibited by the rape-shield provision in R.C. 2907.02(D). *Id.* at paragraphs one and two of the syllabus; *see also State v. Chaney*, 169 Ohio App.3d 246, 2006-Ohio-5288, 862 N.E.2d 559, ¶ 6 (3d Dist.) ("[T]he Ohio Supreme Court has allowed cross-examination concerning a rape victim's prior false allegations of rape for impeachment purposes if the question relates to credibility rather than sexual activity."). To ensure evidence of sexual activity is not disclosed, *Boggs* requires an in camera hearing: "Where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an in camera hearing to ascertain whether sexual activity was involved * * *." *Id.* at paragraph two of the syllabus.

{¶ 13} Here, defense counsel asked Sara on cross-examination, "Have you made any other accusations of sexual abuse against other members of your family?" (Tr. 223).[3] The state immediately objected. At a sidebar, the trial court asked counsel, "What good-faith evidence do you have that they're false accusations?" (Tr. 224). Counsel replied that he had two witnesses who would testify that Sara made false accusations. Counsel then proffered that one of Sara's aunts would testify that Sara had accused her son "of having inappropriate sexual contact with her" and that after the aunt questioned her about this accusation Sara admitted that "it never happened." (Tr. 225). Counsel also proffered that Jane would testify that Sara had accused her of molesting her and that Sara had admitted to him (counsel) that this accusation is false. The trial court sustained the state's objection, saying, "I think this is he said/she said without someone

---

[3] We note that the question as asked is objectionable. *Boggs* applies to prior *false* accusations. Nevertheless, it is clear that counsel is referring to prior accusations of sexual abuse that are false.

specific indicating that she may (indiscernible) be truthful. I think this is getting beyond the pale of cross examination of this girl." (Tr. 226-227).

{¶ 14} The situation here is like that in *Boggs*. During cross-examination of the victim in *Boggs*, defense counsel asked her whether she had made prior false accusations of rape; the state immediately objected. Counsel told the trial court that he had evidence that the victim had falsely accused another man of rape, but the court sustained the state's objection. The *Boggs* Court noted that there was no answer to the question about the prior false rape accusation, no inquiry about "whether the prior accusation was based on sexual activity or was totally unfounded," and no testimony about the prior false accusation was admitted at trial. *Boggs*, 63 Ohio St.3d at 424. Consequently, the Court said that it could not determine whether the defense's prior-false-accusation evidence was properly excluded under the rape-shield provision because it involved sexual activity. Similarly, here Sara was not permitted to answer the question about these accusations, there was no inquiry into whether the accusations involve sexual activity, and no testimony about the accusations was admitted. We cannot determine whether the prior-false-accusation evidence was properly excluded.

{¶ 15} The *Boggs* Court could not determine whether the defense's evidence was properly excluded. Moreover, "the trial judge," said the Court, "must in the first instance determine whether the accused has met his burden of establishing that the victim's prior accusations were clearly unfounded." *Boggs*, 63 Ohio St.3d at 424, 588 N.E.2d 813. ("[B]efore cross-examination of a rape victim as to prior false rape accusations may proceed, the trial judge shall hold an in camera hearing to ascertain whether such testimony involves sexual activity and thus is inadmissible under R.C. 2907.02(D), or is totally unfounded and admissible for

impeachment of the victim. It is within the sound discretion of the trial court, pursuant to Evid.R. 608(B), whether to allow such cross-examination." *Id*.) So the Court reversed and remanded the case to the trial court to conduct an in camera hearing and make the appropriate determinations. We do the same here.

{¶ 16} On remand, the trial court must conduct an in camera hearing about the prior accusations. First, Sara must be allowed to answer the question that she was not permitted to answer at trial–whether she has made prior false accusations of sexual abuse. *Chaney*, 169 Ohio App.3d 246, 2006-Ohio-5288, 862 N.E.2d 559, at ¶ 6 (3d Dist.) ("Pursuant to *Boggs*, the cross-examiner must be allowed to ask the threshold question of whether a rape victim has made prior false accusations of rape."). If her answer is "no," the hearing is over. Hall is bound by her answer and extrinsic contrary evidence is inadmissible. *State v. Netherland*, 132 Ohio App.3d 252, 263, 724 N.E.2d 1182 (1st Dist.1999) (saying that "pursuant to Evid.R. 608(B), in the cross-examination of a victim regarding prior accusations, the defendant 'will be bound by the answers given by the victim'"). If Sara answers "yes," Hall may try to prove that the prior accusations were entirely false. The burden is Hall's, *Boggs* at 423, and to carry his burden, at the *Boggs* hearing Hall may present extrinsic evidence, *State v. Boggs*, 89 Ohio App.3d 206, 211, 624 N.E.2d 204 (4th Dist.1993) (holding, after remand, that the defendant "was entitled to introduce extrinsic evidence"). After all the evidence has been presented, the trial court must determine whether the accusations involve sexual activity or are totally unfounded, i.e., involve no sexual activity. If the court determines the former, the court must simply reinstate the judgment of conviction because cross-examination on the accusations is precluded by the rape-shield provision. But if the court determines the latter, under Evid.R. 608(B), Hall should

have been permitted to cross-examine Sara on the accusations unless the court had properly exercised its discretion to prevent cross-examination. In this regard we note that, "when the essence of the case reduces to the credibility of witnesses–when there is no corroborating evidence introduced–the court should grant some latitude to defendants for inquiry into a prior false allegation of sexual activity, where the accusation is shown to be unfounded, and the event does not nevertheless involve specific instances of the alleged victim's sexual conduct." *State v. Smith*, 2d Dist. Greene No. 94-CA-86, 1995 WL 655943, *7 (Nov. 8, 1995). In such a case, a court that does not allow inquiry into the accusations risks unreasonable denial of the defendant's "right to a full and complete cross-examination" of the alleged victim. *Id.* (reversing and vacating the conviction and remanding for a new trial). If in the trial court's discretion the evidence is still excluded, it should express the reasons for its conclusion and the judgment should be reinstated. If the court determines that the evidence should have been permitted, then the court should grant a new trial.

{¶ 17} The first assignment of error is sustained.

## B. Prosecutorial Misconduct

{¶ 18} The third assignment of error alleges that certain remarks by the prosecutor cumulatively constitute prosecutorial misconduct. Hall did not object to any of the remarks, so all but plain error has been forfeited. *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990). For plain error to exist, the defect in the trial proceedings must be obvious and must have affected the outcome of the trial. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16. "Notice of plain error 'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Lang*, 129 Ohio

St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 19} "Whether a prosecutor's remarks constitute misconduct depends upon (1) whether the remarks were improper and, if so, (2) whether the remarks prejudicially affected an accused's substantial rights. The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" (Citation omitted.) *State v. Maxwell*, Slip Opinion No. 2014-Ohio-1019, ¶ 243, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "Prosecutors are granted wide latitude in closing argument, and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the accused was denied a fair trial." (Citation omitted.) *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149.

{¶ 20} Hall first cites the prosecutor's opening-statement remark that "there are certain elements or what I call pieces of the pie and if one of those elements is not testified to credibly, then you *can* find the defendant not guilty." (Emphasis added.) (Tr. 51). But the trial court corrected this misstatement of the state's burden of proof in its instructions to the jury: "The defendant *must* be acquitted unless the State produces evidence which produces [sic] you beyond a reasonable doubt of every essential element of the offense charged in the indictment." (Emphasis added.) (Tr. 351). "It is presumed that the jury obeys the instructions of the trial court." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 54. Hall was not prejudiced by the misstatement. *Compare State v. Lundgren*, 73 Ohio St.3d 474, 484, 653 N.E.2d 304 (1995) (finding that the prosecutor's statement of the reasonable-doubt standard did not constitute plain error because "the court's reasonable-doubt instructions negated any

misconception by the jury").

{¶ 21}   Hall next contends that the prosecutor's voir dire remark that "[v]ictims look like you, me, anybody" was an improper appeal for sympathy. "[A] prosecutor may not make excessively emotional arguments tending to inflame the jury's sensibilities * * *." *State v. Tibbetts*, 92 Ohio St.3d 146, 168, 749 N.E.2d 226 (2001). We do not think that the prosecutor's remark is part of an excessively emotional argument. It is merely a stray remark–brief and insignificant. Moreover, soon after making it, the prosecutor told the jury that "what we say, even in opening and closing arguments, is not to be considered by you as evidence. It's just our take on what we think the evidence is. You get to make up your own minds." (Tr. 103-104). And the trial court instructed the jury that it "must not be influenced by any considerations of sympathy or prejudice" and that it must "[c]onsider all the evidence and make your findings with intelligence and impartiality and without bias, sympathy or prejudice." (Tr. 357). Hall was not prejudiced by the voir dire remark. *Compare State v. Mundy*, 99 Ohio App.3d 275, 304-305, 650 N.E.2d 502 (2d Dist.1994) (finding no error where "the trial court instructed the jury * * * that they, the jury, were not to be influenced by any considerations of sympathy").

{¶ 22}   Hall lastly contends that closing-argument remarks by the prosecutor violated his Fifth Amendment right not to testify by implying that he failed to respond to the victim's allegations. Direct comment on an accused's failure to testify does violate the Fifth Amendment's self-incrimination clause. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). But "[a] reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify, where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and the jury is instructed not to

consider the accused's failure to testify for any purpose." *State v. Ferguson*, 5 Ohio St.3d 160, 450 N.E.2d 265 (1983), paragraph one of the syllabus. Here, the closing-argument remarks to which Hall objects are these: "[The victim's testimony] is uncontroverted. It is not in dispute. You've heard no other evidence that she was not raped." (Tr. 349). The prosecutor's reference, in these remarks, to the uncontradicted evidence is directed to the strength of the state's evidence. Also, the trial court instructed the jury not to consider Hall's failure to testify for any purpose: "It is not necessary that the defendant take the witness stand in his own defense. He has a constitutional right not to testify. The fact that he did not testify must not be considered for any purpose." (Tr. 355). That Hall was the only potential witness who could contradict the victim's testimony does not change the analysis. *Compare Ferguson* at 163 ("The thrust of appellee's contention is that he was the only potential witness in a position to contradict the victim's testimony. As a result, appellee argues that references to uncontradicted evidence necessarily focus attention on the failure of the accused to take the stand. We disagree."). The prosecutor's remarks are not improper.

{¶ 23} The third assignment of error is overruled.

### C. The Claim of Ineffective Assistance of Counsel

{¶ 24} The second assignment of error alleges that Hall's trial counsel rendered ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), "held that a criminal defendant's Sixth Amendment right to counsel is violated if his trial attorney's performance falls below an objective standard of reasonableness and if there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission. " (Citation omitted.) *Hinton v. Alabama*, ___ U.S. ___, 134 S.Ct. 1081, 1083, 188

L.Ed.2d 1 (2014). Accordingly, "[r]eversal of a conviction for ineffective assistance requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *State v. Maxwell*, Slip Opinion No. 2014-Ohio-1019, ¶ 75, citing *Strickland* at 687.

{¶ 25} Hall contends that his defense counsel's "chief defect" was not properly preparing and presenting either Sara's aunt or Jane to impeach Sara's credibility by testifying that Sara made prior false accusations of sexual abuse. This issue is moot. We are remanding this case for an in camera hearing at which, if necessary, counsel may present these two witnesses for this purpose.

{¶ 26} Hall also contends that counsel's cumulative failure to object to any of the prosecutor's remarks quoted above in our review of the third assignment of error constitutes deficient performance. We disagree. "The decision not to object is one of trial strategy." (Citation omitted.) *State v. Anderson*, 6th Dist. Lucas No. L-01-1239, 2004-Ohio-1188, ¶ 38. And "[d]ebatable trial tactics generally do not constitute ineffective assistance of counsel." *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 116. Moreover, we determined above that the remarks either did not prejudice Hall or were not improper.

{¶ 27} The second assignment of error is overruled.

### D. The Manifest Weight of the Evidence

{¶ 28} The fourth assignment of error alleges that the verdict is against the manifest weight of the evidence. To reverse on weight of the evidence, a court must disagree with the factfinder's resolution of the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). That is, "'[t]he court, reviewing the entire record, weighs the evidence

and all reasonable inferences, considers the credibility of witnesses and determines [that] in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id*., quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id*., quoting *Martin* at 175.

{¶ 29} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Cundiff*, 2d Dist. Montgomery No. 24171, 2011-Ohio-3414, ¶ 27, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "'Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the fact finder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the fact finder, who has seen and heard the witness.'" *Id*. at ¶ 28, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (August 22, 1997). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." *Id*. at ¶ 29.

{¶ 30} Hall cites problems with Dr. Vavul-Roediger's and Sara's testimony and says that certain evidence is missing. He asserts that the doctor is biased from her daily work and her perceived purpose. Hall points out that she first met the victim years after the alleged abuse. And he points out that Dr. Vavul-Roediger admitted that her medical opinion and evaluation are based

on what Sara reported to her. Dr. Vavul-Roediger admitted that there was no scarring of the labia and that there was no bruising to the hymen, says Hall. And she admitted that the healed hymenal tear could have occurred only months before her examination of Sara. About Sara's testimony, Hall says that she had to be coached by the prosecutor to say that he "put his penis in her vagina." (We don't see any "coaching.") Hall points out that she did not tell her mother about the rape for four years. (Sara explained why she waited.) He also points out that years after the rape, Sara sought Hall's company and voluntarily went to work for him. Hall says that based on Sara's testimony, she and Hall would have had virtually no time alone together. This is corroborated, Hall notes, by Jane's testimony. (But Jane also testified that it was possible that they could have been alone together.) Hall lastly points out that no physical evidence was presented, like blood, noise, screaming, or upset dogs, that, he says, might be expected if a person were being raped. (Sara testified that she was bleeding afterwards, and Jane testified that there were no animals in the house in 2007.)

**{¶ 31}** The manifest weight of the evidence supports the jury's guilty verdict. It is not patently apparent that the jury lost its way in finding Hall guilty, so we defer to its credibility and weight determinations. We note too that none of the evidentiary "problems" cited by Hall contradicts or is necessarily inconsistent with Sara's testimony that Hall raped her.

**{¶ 32}** The fourth assignment of error is overruled.

**{¶ 33}** The trial court's judgment is reversed. The case is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

FAIN, and DONOVAN, JJ., concur.


Copies mailed to:

Mathias H. Heck
Carley J. Ingram
J. Allen Wilmes
Hon. Barbara P. Gorman