[Cite as *State v. Jackson*, 2015-Ohio-5490.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26050 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-56 |
| v. | : | |
| | : | (Criminal Appeal from |
| GEORGE E. JACKSON | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of December, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

MARSHALL G. LACHMAN, Atty. Reg. No. 0076791, 75 North Pioneer Boulevard, Springboro, Ohio 45066
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

        {¶ 1} Defendant-appellant George E. Jackson appeals from his conviction on two

counts of Rape of a Child Under 13, ten counts of Gross Sexual Imposition of a Child Under 13, three counts of Importuning, one count of Illegal Use of A Minor in Nudity-oriented Materials, one count of Possession of Criminal Tools, eight counts of Pandering Sexually-oriented Materials Involving a Minor (solicit/possess), four counts of Pandering Obscenity Involving a Minor (buy/possess), three counts of Pandering Sexually-oriented Materials Involving a Minor (create/reproduce/publish), and three counts of Pandering Obscenity Involving a Minor (create/reproduce/publish). Jackson raises five assignments of error. First, Jackson contends that the trial court erred by not conducting a hearing before overruling his motion in limine and excluding evidence of the victim's prior false accusations of sexual abuse. Jackson further argues that his convictions are tainted by the ineffective assistance of counsel. Jackson alleges that the trial court erred in overruling his motion to withdraw his plea without conducting a hearing, and that his convictions are against the manifest weight of the evidence and are not supported by sufficient evidence.

{¶ 2} The State contends that the convictions are supported by credible and sufficient evidence and that Jackson received effective assistance of counsel. The State further argues that the trial court properly excluded evidence of prior accusations made by the victim, and properly overruled the motion to allow Jackson to withdraw his plea.

{¶ 3} We conclude that the trial court did not err in excluding the victim's prior accusations of sexual abuse against a different offender, without holding a hearing, in view of the fact that the defense made no proffer of the falsity of those accusations. We also conclude that the court did not err by not conducting a hearing before overruling the motion to withdraw the plea, since Jackson failed to present a reasonable and legitimate

basis for the withdrawal of the plea. We further conclude that defense counsel was not ineffective, that sufficient evidence was presented to support the verdicts, and that the verdicts are not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.

## I. The Alleged Sex Offenses

{¶ 4} C.T. began dating Jackson in December, 2011, after meeting at a roller skating rink. Jackson, C.T. and her daughter, D.S., attended an all-night skating party on New Year's Eve, then went to Jackson's apartment in Dayton. The victim, D.S., testified that both before and after the skating party, at three different times, Jackson touched her body, kissed her lips and breasts, touched her buttocks, and "fingered" her vagina under her clothes. At the time, D.S. was eleven years old. After D.S. reported these events to her mother, the police were contacted, and D.S. was interviewed at Care House.

{¶ 5} A search warrant was sought in furtherance of investigating Jackson for rape charges, to obtain from Jackson's apartment, "cell phones, cameras, video recording equipment, computers and hard drives, Wii Game Systems, any nude, explicit Photographs of minor children or adults, and digital media storage devices, I-pod, portable masseuse table/bed and any and all evidence associated with the sexual assault investigation." The affidavit stated that the facts were based on statements made by the victim and her mother that Jackson had a collection of photographs and other images on three cell phones that depicted different body parts of unidentified women and juvenile girls. As a result of the search of Jackson's apartment, the police seized an iPod, three iPhones, an LG cell-phone, four portable hard drives, video recording equipment, four

CD/DVDs, nine mini video tapes, and other personal items. Based on the contents found in the cell phones, computers and the videotapes, additional offenses were discovered regarding a separate victim, N.C.

{¶ 6} In 2009, Jackson lived in a Dayton suburb with his wife. At that time, N.C. was six years old and periodically visited their home. The videotape seized from the search warrant of Jackson's home depicts Jackson helping N.C. undress, N.C. taking a shower, Jackson applying soap to the boy's body, washing the boy's penis, and holding the boy up so the camera could capture a clear view of the boy's genitals. N.C. was initially interviewed at Care House by a female detective, then later interviewed by a male police detective. N.C. reported to the male detective that Jackson had touched him inappropriately a number of times, giving specific details about numerous instances when Jackson made sexual contact with him.

## II. The Course of Proceedings

{¶ 7} Jackson was charged with numerous sex offenses under three separate indictments, which were referred to in the record as Indictments A, B and C. The charges in Indictment A are in connection with offenses committed against the minor victim D.S. In Indictment A, Jackson was charged with two counts of Rape, felonies of the first degree, in violation of R.C. 2907.02(A)(1)(b) (person under the age of 13); two counts of Importuning, felonies of the third degree, in violation of R.C. 2907.07(A); and seven counts of Gross Sexual Imposition, felonies of the third degree, in violation of R.C. 2907.05(A)(4).

{¶ 8} The charges in Indictment B are in connection with the offenses committed

against the minor victim N.C. In Indictment B, Jackson was charged with one count of Illegal Use of a Minor in Nudity-oriented Materials, a felony of the second degree, in violation of R.C. 2907.323(A)(1); one count of Importuning, a felony of the third degree, in violation of R.C. 2907.07(A); and five counts of Gross Sexual Imposition, felonies of the third degree, in violation of R.C. 2907.05(A)(4).

{¶ 9} The charges in Indictment C all relate to images found in Jackson's cell phones, computers or other electronic devices. Indictment C charged Jackson with three counts of Possession of Criminal Tools, felonies of the fifth degree, in violation of R.C. 2923.24(A); seventeen counts of Pandering Sexually-oriented Materials Involving a Minor (solicit/possess), felonies of the fourth degree, in violation of R.C. 2907.322(A)(5); eight counts of Pandering Obscenity Involving a Minor, felonies of the fourth degree, in violation of R.C. 2907.321(A)(5); one count of Pandering Sexually Oriented Matter Involving a Minor (create/produce), a felony of the second degree, in violation of R.C. 2907.323(A)(3); five counts of Pandering Obscenity Involving a Minor (create, reproduce, publish), felonies of the second degree, in violation of R.C. 2907.321(A)(1); three counts of Pandering Sexually-oriented Materials Involving a Minor (create/reproduce/publish), felonies of the second degree, in violation of R.C. 2907.322(A)(1); one count of Illegal Use of a Minor in Nudity-oriented Materials (create/produce), a felony of the second degree, in violation of R.C. 2907.323(A)(1); and one count of Illegal Use of a Minor in Nudity-oriented Materials (possess/view), a felony of the fifth degree, in violation of R.C. 2907.323(A)(3).

{¶ 10} Jackson filed a motion to suppress all evidence obtained from Jackson's computers, cell phones, other electronic devices and the video recording equipment,

including the testimony of N.C. At the hearing on the motion to suppress, no witnesses testified but defense counsel and the State agreed that "the sole issue was for the Court to determine whether the four corners of the affidavit contained probable cause to justify the search of the items named in the search warrant." Transcript of Motions hearing, 1/31/13, pg. 5. The trial court overruled in part, and sustained in part, the motion to suppress, finding that the affidavit in support of the search warrant did not provide the police with probable cause to seize the electronic devices, other than the cell phones. After the trial court suppressed the evidence necessary to prove some of the charges in Indictment C, the State agreed to nolle 13 counts in Indictment C, and the court dismissed those counts.

{¶ 11} Subsequent to the court's ruling on the motion to suppress, Jackson filed a motion to dismiss the charges in Indictment B supported by the videotape seized pursuant to the search warrant, on the grounds that the court's suppression ruling excluded all evidence seized other than the cell phones. The trial court agreed that the affidavit for the search warrant did not support probable cause for the seizure of the videotape, but the trial court, in overruling the motion to dismiss found that the good-faith exception applied, by stating as follows:

> And, the Court finds that, again, on this good faith exception, as the court found in the court's suppression decision that there is no evidence that Detective Mary Lou Phillips misled the issuing - - the magistrate judge who issued the search warrant. The issuing judge did not wholly abandon his judicial role. And the Court finds that Detective Phillips' affidavit was not so lacking in indicia of probable cause that the videotape would contain

evidence of the Defendant's sexual activity with D.S, as to make the belief in the existence of that probable cause unreasonable. So the good faith exception applies.

Transcript, Motions hearing 1/31/13, pg. 7.

{¶ 12} The trial court also denied the defense motion to suppress the testimony of N.C. Jackson had argued that the police interview of the minor victim N.C. would not have taken place without the unlawful seizure of the electronic equipment, and the officers' review of the videotape and location of the child depicted in the videotape. The trial court found that Jackson's position for the motion relied on facts outside the record, as no testimony was taken at the suppression hearing. The trial court also stated that the "but for" argument, [but for the illegally seized videotape, the child victim, N.C. would not have been discovered] is insufficient as a matter of law, not only because the videotape was legally seized but also because the necessary evidentiary factors to consider the suppression of testimony of a live witness were not presented. Transcript, Motions hearing 1/31/13, pg.10, citing *U.S. v. Ceccolini*, 435 U.S. 268, 98 Sup. Ct. 1054, 55 L.Ed.2d 268 (1978). *State v. Wipf*, 397 F. 3d 677 (8th Cir. 2005).

{¶ 13} Prior to trial, Jackson filed a motion in limine, asking the court to allow evidence of a previous incident, reported to the police, when the minor victim D.S. accused another individual of sexual contact, to support Jackson's defense of an alternative suspect. The State argued that the rape shield law applied to prevent the disclosure of any evidence of the victim's past sexual activity, that the incidents were not sufficiently similar and that its admission would be unduly prejudicial. The trial court adopted the State's arguments and overruled the defense motion without conducting a

hearing. Dkt. #146.

{¶ 14} Jackson filed a motion to sever the trials on the three indictments. The trial court agreed to conduct separate trials for the charges identified in Indictments A and B, related to two different victims, but found that the charges under Indictments A and C should be tried together, based on an assumption that the victim, D.S, in Indictment A, would testify that she was shown the cell phone images that form the evidentiary basis for the charges in Indictment C. Transcript, Motions hearing 1/31/13, pg. 29. In its analysis of the motion to sever, the trial court agreed with the State's position that the cell-phone images are admissible under Evid. R. 404(B), "as the facts of the alleged sexual activity of the Defendant with D.S., which is the subject of Indictment A is inextricably related to the cellphone evidence. And therefore, the cellphone is admissible pattern evidence under [Evid. R.] 404(B), and that the State has satisfied the other acts test." *Id.*

{¶ 15} Once it was decided that the cell-phone images would be admissible in the trial on the Indictment A charges, Jackson pled no contest to nineteen of the counts charged in Indictment C. At the plea hearing, the court specifically advised Jackson that his decision to plead did not necessarily mean that the cell-phone images would not be seen by the jury hearing the charges brought against him in Indictment A, because it would still depend on whether the State offers a sufficient foundation for admission. Jackson acknowledged that he understood this admonition. Dkt. #211 at pg. 25.

{¶ 16} After the plea hearing, the State filed a motion in limine asking the court to allow the cell-phone images into evidence at the trial on the Indictment A charges, based on Evid. R. 404(B). Jackson opposed the motion, arguing that none of the photos are of similar conduct, and the photos are therefore insufficient to prove common scheme,

motive or intent. At the final pre-trial conference the trial court verbally overruled the State's motion, acknowledging that it had incorrectly assumed in its ruling on the motion to conduct separate trials, that the victim in the Indictment A charges saw the cell-phone images that were the evidentiary support for the charges in Indictment C. The trial court adopted the defense position that the cell-phone images were not admissible under Evid. R. 404(B), relying on the holding in *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116.

{¶ 17} After the plea hearing, the State filed a motion to allow the admission of the cell-phone images during the trial on the Indictment B charges. Jackson opposed the motion on the basis that the admission of photos of other children, not the victim in the trial, would be more prejudicial than probative. The trial court agreed with the defense argument and sustained the motion, adopting the reasoning of Jackson's memorandum in opposition to the State's motion in limine. Dkt #184.

{¶ 18} At the conclusion of the trial on the charges in Indictment A, Jackson moved to dismiss the charges, based on Crim R. 29. At the conclusion of the trial on the Indictment B charges, Jackson made a Crim. R. 29 motion for an acquittal of all charges. Both motions were overruled. After completion of the jury trial on the charges in Indictment A, verdicts of guilty were rendered on all eleven counts. After completion of the jury trial on the charges in Indictment B, verdicts of guilty were rendered on all counts except for a finding of not guilty on the charge of Gross Sexual Imposition in Count 2.

{¶ 19} After convictions were rendered against Jackson from the separate jury trials for the charges in Indictments A and B, but prior to sentencing, Jackson moved to withdraw his plea to the charges contained in Indictment C. Jackson argued that his plea

was not knowingly and intelligently made, because he was under the mistaken impression that the victim, D.S., would be testifying that she saw the cell-phone images during the trial on the Indictment A charges. The trial court denied the motion to withdraw the plea on the basis that: (1) Jackson fully understood the nature of the 19 charges in Indictment C, and the potential sentences for convictions of such charges; (2) Jackson's delay in filing the motion to withdraw his plea was egregious; and (3) there was no factual basis to Jackson's claim of innocence.

{¶ 20} Based on the convictions from all three indictments, Jackson was sentenced to serve a term of imprisonment totaling 23 years to life. From his conviction and sentence, Jackson appeals.

### III. The Trial Court Properly Excluded Evidence of the Victim's Prior Accusations of Sexual Misconduct

{¶ 21} For his First Assignment of Error, Jackson alleges:

THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION IN LIMINE TO PERMIT EVIDENCE OF PRIOR FALSE ALLEGATIONS OF SEXUAL ABUSE WITHOUT CONDUCTING AN IN CAMERA HEARING

{¶ 22} Jackson contends that his motion to allow the admission of evidence from the victim regarding her previous accusations of sexual misconduct was improperly overruled without a hearing. A trial court has discretion to determine whether a witness may be asked on cross-examination about specific acts of conduct that are "clearly probative of truthfulness or untruthfulness." Evid.R. 608(B). *State v. Chaney*, 169 Ohio

App.3d 246, 2006-Ohio-5288, 862 N.E.2d 559, ¶ 5 (3d Dist.). A court abuses its discretion by acting in a manner that is unreasonable, arbitrary or unconscionable. *State ex rel. Askew v. Goldhart,* 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996). Decisions are unreasonable if they are not supported by a sound reasoning process. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 23} Jackson relies on the holding of the Supreme Court of Ohio in *State v. Boggs*, 63 Ohio St. 3d 418, 588 N.E. 2d 813 (1992), which directs trial courts to conduct an in camera hearing to determine the admissibility of a rape victim's prior false rape accusations. In *Boggs*, the Supreme Court of Ohio provides guidance for balancing the objective of the rape shield statute, R.C. 2907.02 (D), which protects the privacy of a rape victim's prior sexual activity, with the legitimate goal of a criminal defense strategy to test the credibility of the rape victim. The *Boggs* court explains that an in camera hearing should be conducted at the pre-trial stage to determine if the prior accusations are unfounded and, if so, whether the conduct involves sexual activity that is inadmissible pursuant to the rape shield law. *Id.* at ¶ 2 of the syllabus. Jackson had filed a pre-trial motion asking the court to allow the admission of the victim's testimony of her prior accusations, which was overruled. Neither Jackson's pre-trial motion, nor his proffer at trial, provided the trial court with any proof or verifiable allegation that the victim's prior accusations of a sexual assault were demonstrably false, or even that there was a reasonable probability of falsity. To the contrary, the proffer made at trial acknowledges that the victim's prior accusations actually resulted in a no-contest plea by the alleged offender.

{¶ 24} In *State v. Hall*, 2d Dist. Montgomery No. 25794, 2014-Ohio-2094, we applied the holding of *Boggs*, and remanded the cause for an in camera hearing to determine the admissibility of a rape victim's prior accusations after the defense proffered evidence of two witnesses who would testify that the victim had made prior accusations of sexual assaults and later recanted her accusations. *Id.* at ¶ 13. Based on that proffer, we found that the trial court was required to conduct an in camera hearing to allow the defense to ask the victim whether she had made prior false accusations of sexual abuse, and if the answer was yes, the defense must be given the opportunity to prove that the prior accusations were false. *Id.* at ¶ 16. In the case before us, the trial court was not required to conduct a hearing, because no proffer of the falsity of the prior accusations was made. Therefore, Jackson's First Assignment of Error is overruled.

### IV. Jackson's Trial Counsel Was Not Ineffective

{¶ 25} For his Second Assignment of Error, Jackson alleges:

APPELLANT WAS DENIED HIS CONSTITUIONALLY GUARANTEED RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 26} Jackson contends that defense counsel was ineffective because: (1) he failed to object to the lack of any testimonial evidence at the suppression hearing; (2) in the motion to suppress, he failed to specifically identify the videotape as the evidence he was seeking to suppress; (3) in his motion to dismiss, he failed to provide evidentiary support for allegations that the victim would not have been found for the Indictment B charges, but for the seizure of the videotape; (4) he failed to file a second motion to

suppress to present evidence at a hearing to support the link between the improper seizure of the videotape and the live testimony of the victim; and (5) he failed to proffer evidence at trial of the victim's prior false accusations, which were the subject of the pre-trial motion in limine that was overruled by the court.

**{¶ 27}** To reverse a judgment based on ineffective assistance, the record must support a finding that defense counsel's performance was deficient, and that a reasonable probability exists that, but for counsel's omissions, the outcome would have been different. *State v. Jones,* 1st Dist. Hamilton No.C-130359, 2014-Ohio-3110, ¶ 27, citing *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

**{¶ 28}** Jackson has not established that he was prejudiced by his counsel's deficient performance to the extent that the outcome would have been different. We agree that the trial court properly applied the "good faith" exception to the exclusionary rule to allow the admission of the videotape evidence obtained from the search warrant. *See, e.g.*, *State v. Perez*, 2015-Ohio-1753, 32 N.E. 3d 1010 (2d Dist). Therefore, we conclude that a different outcome would not have resulted if defense counsel had presented testimony at the suppression hearing, if he had specified the videotape as the evidence to be suppressed, or if he had filed a second motion to suppress.

**{¶ 29}** Jackson has not established that he was prejudiced by his counsel's failure to present evidence in support of the motion to dismiss Indictment B on the basis that but for the wrongfully seized videotape, the police would not have discovered the identity of the victim. Since the videotape was not wrongfully seized, the basis of the motion was

unfounded, so that no testimony linking the videotape to the discovery of the victim would have made a difference in the outcome of the motion.

{¶ 30}  Jackson has not established that he was prejudiced by his counsel's failure to proffer evidence at trial of the victim's prior false accusations of sexual misconduct. The record does reflect that a proffer was made, but the proffer included an admission that the accused offender pled no contest to the charges. Jackson has not alleged or supported a claim that any evidence was available to support the falsity of the victim's accusations that could have been presented by his counsel. Defense counsel cannot be found to be ineffective by failing to present or proffer evidence that does not exist.

{¶ 31}  Jackson's Second Assignment of Error is overruled.


**V.  The Trial Court Did Not Abuse its Discretion in Overruling**

**Jackson's Motion to Withdraw his Pleas**

{¶ 32}  Jackson's Third Assignment of Error alleges as follows:

THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S

MOTION TO WITHDRAW NO CONTEST PLEAS.

{¶ 33} Jackson contends that the trial court erred by failing to conduct a hearing before overruling his motion to withdraw his plea. The Supreme Court of Ohio has stated that a trial court should hold a hearing on a motion to withdraw a plea "unless it is clear that denial of the motion is warranted." *State v. Wilson*, 2d Dist. Montgomery No. 26354, 2015-Ohio-1584, ¶ 19, citing *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 51.

{¶ 34} We recently reviewed the law applicable to the review of rulings on motions

to withdraw pleas:

> Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Under the foregoing rule, a pre-sentence motion to vacate a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). Nevertheless, even under the pre-sentence standard, the right to withdraw a plea is not absolute and a trial court retains discretion to overrule a pre-sentence plea-withdrawal motion. *Id.* The pre-sentence standard, however, is far more lenient than the "manifest injustice" standard applicable to post-sentence motions. *State v. Fugate,* 2d Dist. Montgomery No. 21574, 2007-Ohio-26, ¶ 10.
>
> * * *
>
> But even under the more lenient pre-sentence standard, "a defendant must show a reasonable and legitimate basis for the withdrawal of the plea." * * * "A change of heart is not enough," and a trial court's finding regarding a defendant's true motivation is entitled to deference. * * * Likewise, a trial court's ultimate decision to grant or deny a pre-sentence motion to withdraw a guilty plea is subject to review for an abuse of discretion. *Fugate*, at ¶ 10.

*State v. DeJesus*, 2d Dist. Greene No. 2015-CA-4, 2015-Ohio-4111, ¶ 16, citing *State v. Simpson*, 2d Dist. Montgomery No. 24266, 2011-Ohio-6181, ¶ 7, 10.

**{¶ 35}** In the case before us, the trial court determined that the motivation of Jackson's motion to withdraw his plea was the failure of his strategy to use the plea as a means to exclude the evidence from the Indictment C charges from being used as evidence in the trials on the charges brought under Indictments A and C. In denying Jackson's motion to withdraw his plea, the trial court issued a 29-page opinion, which reviewed the complete transcript of the plea hearing. Dkt. #210. In lieu of conducting a hearing on the motion to withdraw, the trial court accepted as true the factual allegations asserted by Jackson in his motion. Specifically, the trial court acknowledged that the court's decision not to sever the counts in Indictment A and C was based on a factually inaccurate assumption that the victim in Indictment A would testify that she saw the images on Jackson's cell phone that are the evidentiary basis for the charges in Indictment C. The trial court also acknowledged that Jackson's plea was entered one week after the court overruled the motion to sever the trials, and that one day after the plea was entered, the State informed Jackson that the victim had not been shown the cell-phone images. The trial court acknowledged that based on this new information, Jackson immediately realized that since the trial on Indictment A charges would not include any reference to the images, the two indictments would not have been joined for one trial. It was significant to the trial court that although this realization was made in February, he did not ask to withdraw his plea until nine months later, after guilty verdicts were rendered in the trials on the Indictment A and B charges.

**{¶ 36}** In evaluating whether a trial court has abused its discretion in overruling a motion to withdraw a plea, we have reviewed the following nine factors set forth in *State*

*v. Fish,* 104 Ohio App. 3d 236, 240, 661 N.E. 2d 788 (1st Dist. 1995):

> (1) whether the accused is represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state is prejudiced by withdrawal of the plea.

*State v. Massey*, 2d Dist. Champaign No. 2015-CA-1, 2015-Ohio-4711, ¶ 11. *See also State v. Spurgeon,* 2d Dist. Greene No. 2014-CA-12, 2014-Ohio-4849, ¶¶ 15-16; *State v. Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404; *State v Berry*, 2d Dist. Greene No. 2013-CA-34, 2014-Ohio-132, ¶ 33, quoting *State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 18. Consideration of the foregoing factors involves a balancing test, and no single factor is dispositive. *Preston* at ¶ 20.

**{¶ 37}** The record supports that Jackson was represented by competent counsel and that he was afforded a full hearing before he entered his plea, at which the court took appropriate steps to assure that Jackson understood the nature of the charges and the possible penalties. It is significant that at the plea hearing, the trial court specifically admonished Jackson that his decision to plea did not mean either that the evidence from

the charges not going to trial because of his plea would be, or would not be, admitted at the trial on charges brought under Indictment A, and Jackson acknowledged that he understood.   The fact that the motion to withdraw was not made until the day set for sentencing, which was nine months after the defense was notified that the State would not present the evidence from the Indictment C charges at the trial on the charges from Indictment A, lends support for concluding that the true motivation for Jackson's motion was simply a change of heart, which does not present a reasonable and legitimate basis for withdrawing a plea. The only question remaining is whether the trial court abused its discretion by not conducting a hearing on the motion to withdraw the plea, given the fact that the motion failed to present a reasonable and legitimate basis for withdrawing the plea, accepting as true all factual allegations upon which the motion is based, and the fact that the trial court gave full and fair consideration to the motion. Under these unique circumstances, we conclude that the trial court did not abuse its discretion by overruling the motion without a hearing.   The hearing would have served no useful purpose, since the trial court accepted as true Jackson's factual allegations, but found those allegations insufficient to support a withdrawal of his plea.

{¶ 38}   Jackson's Third Assignment of Error is overruled.

## VI. The Convictions Are Supported by Sufficient Evidence

{¶ 39} For his Fourth Assignment of Error, Jackson alleges as follows:

THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION FOR ACQUITTAL SINCE THE STATE FAILED TO SUPPLY SUFFICIENT EVIDENCE AS TO ALL THE ELEMENTS NECESSARY TO

SUPPORT THE CHARGES AGAINST THE DEFENDANT

**{¶ 40}** Jackson contends that the trial court erred in overruling his Crim.R. 29 motions for judgment of acquittal. Specifically with regard to the motion made in the first trial on the Indictment A charges, Jackson alleges that the evidence is insufficient to establish that the offenses occurred on the dates specified in the Bill of Particulars, and that based on inconsistencies in the victim's report of the offenses, no rational trier of fact could find her testimony credible. With respect to the motion made at the second trial regarding the charges in Indictment B, Jackson specifically alleges that inconsistencies in the victim's testimony rendered his credibility unworthy of belief, such that no rational trier of fact could have found Jackson guilty.

**{¶ 41}** "Reviewing the denial of a Crim. R. 29 motion * * * requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." *State v. Cokes*, 2d Dist. Montgomery No. 26223, 2015-Ohio-619, ¶ 23 (internal citation omitted). When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on at least one element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist. 2000). " 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Morefield*, 2d Dist. Montgomery No. 26155, 2015-Ohio-448, ¶ 18, quoting

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶ 42}** At trial, the defense argued that the evidence presented at the first trial on the Indictment A was insufficient because the victim's testimony regarding the timing of the sexual misconduct did not match the dates alleged in the Bill of Particulars, which specified that the events happened between December 31, 2011 and January 2, 2012. Dkt. #31. On cross-examination, the victim, D.S., did agree that the first incident with Jackson happened one or two days before the incident on New Year's Eve. At trial, Jackson argued that he was prejudiced by this change in the date of the alleged offense, because he might have been able to pursue an alibi defense if he had known that the victim would testify to an earlier date of the offense. It has been held that precise times and dates are not essential elements of an offense, and therefore the failure to provide dates and times in an indictment is not grounds for its dismissal. *State v. Sellards*, 17 Ohio St. 3d 169, 478 N.E. 2d 781 (1985). We have held that "an allowance for inexactitude in the date and time of the offense is permissible, and must be made especially in cases involving the sexual abuse of young children where there are several instances of abuse spread out over an extended time period." *State v. Bolling*, 2d Dist. Montgomery No. 20225, 2005-Ohio-2509, ¶ 36. Therefore, the fact that the testimony of a young child was not precise as to the time and date of an assault, but within a reasonable range of the dates specified in a Bill of Particulars is sufficient to prove the statutory elements of the sex offense.

**{¶ 43}** Jackson also argues that the testimony of both victims (in the A & B indictments) was so inconsistent with prior statements given to police during their interviews at Care House, that no rational trier of fact could have found Jackson guilty

based on such unreliable testimony. We disagree. Viewing the evidence in a light most favorable to the prosecution, the record does contain sufficient evidence from the victims to prove all the elements of the offenses.

**{¶ 44}** In the first trial on the Indictment A charges, the victim's testimony covered all the essential elements of two counts of Rape, as set forth in R.C. 2907.02(A)(1)(b), when she stated that Jackson twice "fingered her vagina on the inside," at a time when she was less than 13 years old. Trial Transcript, May 20, 2013, pgs. 137-149. This statement meets the element of engaging in "sexual conduct," as defined by R.C. 2907.01 (A), which includes the insertion of any body part into the vaginal opening of another. The victim's testimony covered all the essential elements of two counts of Importuning, as set forth in R.C. 2907.07, when she stated that Jackson twice asked her to "suck his penis." This meets the definition of soliciting a person under 13 to engage in "sexual activity" as defined by R.C. 2907.01 (C). The victim's testimony covered all the essential elements of seven instances of Gross Sexual Imposition, as defined by R.C. 2907.05, when she testified that Jackson had kissed her, and touched her breasts, vaginal area, and buttocks on three separate occasions. Contact with each separate area of the victim's body meets the definition of a separate charge of "sexual contact," defined in R.C. 2907.01(B) as any touching of an erogenous zone of another for the purpose of sexual gratification.

**{¶ 45}** In the second trial on the Indictment B charges, the victim's testimony covered all the essential elements of one count of Illegal Use of a Minor in Nudity-oriented Materials, as set forth in R.C. 2907.323(A)(1), by the admission of the videotape that depicted Jackson engaging in sexual contact with the victim in the shower. The victim's testimony covered all the essential elements of one count of Importuning, as set forth in

R.C. 2907.07(A), when he stated that Jackson asked him to put his mouth on his penis. Trial Transcript, Oct. 30, 2013, at pg. 240. All the essential elements of five counts of Gross Sexual Imposition, as set forth in R.C. 2907.05(A)(4), were presented through the testimony of the victim when he described at least five different occasions and locations, between the ages of 5 and 8, when Jackson touched the victim's penis with his hand, or touched his penis to the victim's buttocks. Trial Transcript, Oct. 30, 2013, at pgs. 224-245.

{¶ 46}  Based on our review of the record, we conclude that the convictions are supported by sufficient evidence.   Jackson's Fourth Assignment of Error is overruled.


**VI. The Verdicts Are Not Against the Manifest Weight of the Evidence**

{¶ 47} For his Fifth Assignment of Error, Jackson alleges as follows:

THE TRIAL COURT'S VERDICTS SHOULD BE REVERSED AS THEY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 48} Jackson contends that his convictions are against the manifest weight of the evidence for the same reasons raised in his Fourth Assignment of Error, that inconsistencies in the testimony of the victims rendered their testimony unreliable. Unlike the previous assignment of error, in consideration of this argument, we are required to review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses. *State v. Hancock*, 108 Ohio St. 3d 57, 2006-Ohio-160, 840 N.E. 2d 1032, ¶ 39.

{¶ 49} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." *State v. Thompkins*, 78 Ohio

St.3d 380, 387, 678 N.E.2d 541 (1997). Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

{¶ 50} Weighing the credibility of victims who are young children, particularly when a long period of time elapses between the incident and the police interview or the trial is a difficult task. We recognize that "the trier of fact is better situated than an appellate court to view witnesses and to observe their demeanor, gestures, voice inflections and to use those observations in weighing credibility." *State v. Lewis*, 4th Dist. Scioto No. 01CA2787, 2002 WL 368625 (Feb. 25, 2002). "A trier of fact is free to believe all, part or none of the testimony of each witness." *Id.* at *3, citing *State v. Long,* 127 Ohio App.3d 328, 713 N.E.2d 1 (4th Dist. 1998). Although the testimony of the victims in the present case does contain inconsistencies, we do not find that the jury lost its way in deciding to believe the portions of the victims' testimony identifying Jackson and describing his conduct that met the elements of the charged offenses.

{¶ 51} Jackson's Fifth Assignment of Error is overruled.

## VII. Conclusion

{¶ 52} All assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and HALL, J., concur.

Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
Marshall G. Lachman
Hon. Dennis J. Langer