[Cite as *State v. McCloud*, 2018-Ohio-3291.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27825 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-1956/2 |
| | : | |
| ALFORD McCLOUD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of August, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

PAMELA L. PINCHOT, Atty. Reg. No. 0071648, 345 North Main Street, Unit 2, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Alford McCloud, appeals from his conviction on one count of robbery, a second degree felony in violation of R.C. 2911.02(A)(2). McCloud argues that his conviction should be overturned because the State's evidence did not suffice to prove every element of the offense, and because the jury's verdict was against the manifest weight of the evidence. We find that McCloud's arguments lack merit, and therefore, we affirm his conviction.

## I. Facts and Procedural History

{¶ 2} Between eight and nine o'clock in the morning on June 22, 2017, Jermaine Dawson travelled by bus from the homeless shelter where he was living to a bus stop on Main Street in Dayton. Trial Tr. 135:9-136:3 and 194:23-195:19. Dawson went to the stop to meet a friend who had offered transportation and help finding a job. *Id.* at 136:12-136:18 and 164:12-165:7.

{¶ 3} An hour earlier, Dawson had consumed marijuana. *Id.* at 156:5-156:13 and 165:8-165:21. Having reached the bus stop roughly 45 minutes before he expected his friend to arrive, Dawson purchased two, 24-ounce cans of beer at the nearby United Foods store and returned to the stop to drink them. *Id.* at 136:12-136:18, 144:6-144:10, 156:19-156:24 and 164:12-166:5. When asked later whether his sensory perception was impaired as a result, Dawson answered that he "was perfectly fine [while he] was at the bus stop," inasmuch as consuming alcohol and marijuana was a "normal activity" for him at the time. *See id.* at 156:14-157:7.

{¶ 4} At some point thereafter, two men approached the bus stop: McCloud, whom Dawson recognized from the homeless shelter, and Charles McAlister. *Id.* at 137:22-

138:20 and 165:22-166:9. A conversation ensued, and Dawson asked whether McCloud knew where he could purchase more marijuana. *Id.* at 139:14-139:25. Because McCloud "made references [to being] hungry," Dawson gave him five dollars for food. *Id.* at 140:8-141:6. This left Dawson with an estimated $36 to $38 on his person, which he kept in his right sock. *Id.*

{¶ 5} McAlister, however, irritated Dawson, at least partly because McAlister "wouldn't stop talking."[1] *Id.* at 140:8-141:17. Dawson's temper thus aroused, he announced his intention to leave, and McAlister then said to McCloud, "[y]ou know what you got to do." *Id.* at 141:21-142:19. Alarmed by what he perceived to be the hostile implications of McAlister's remark, Dawson "made a beeline towards the alley" behind the United Foods store. *Id.* at 142:20-144:8. Apart from his desire to avoid McAlister and McCloud, Dawson acknowledged afterwards that he sought refuge in the alley because he needed a place to urinate in which he would be screened from the view of passers-by. *Id.* at 144:1-144:24.

{¶ 6} McAlister and McCloud followed; Dawson estimated that McAlister followed him at a distance of approximately 50 feet, and McCloud at a distance of approximately five feet. *Id.* at 144:25-146:9. As he trailed Dawson toward the alley, McCloud demanded money, to which Dawson replied, "I ain't got no money for you." *Id.* at 145:3-145:12. McCloud responded by accusing Dawson of lying, and Dawson "took [the accusation] as a form of [further] aggression." *Id.*

{¶ 7} Once in the alley, Dawson proceeded to relieve himself near an external

---

[1] Dawson had the impression that McAlister expected an invitation to join him and McCloud in consuming any marijuana that he managed to purchase, though he did not recall McAlister saying as much. Trial Tr. 139:14-140:4 and 141:21-142:4.

cabinet freezer.  *See id.* at 147:23-148:13 and 151:1-151:6.  Although McAlister was still approaching the alley, McCloud had followed Dawson very closely, prompting Dawson to request a little privacy.  *Id.* at 149:9-149:21.  Dawson apparently lost consciousness at that moment.  *Id.* at 151:4-151:14.

{¶ 8} When he regained consciousness, Dawson felt disoriented and discovered that the money he kept in his right sock had been taken.  *Id.* at 151:12-152:9.  He was helped into the United Foods store by an employee.  *Id.* at 150:13-150:23 and 211:17-213:2.  At nearly the same moment, an officer with the Dayton Police Department reported to the store to view security video of an unrelated incident from the day before; the officer was consequently present as Dawson entered the store with the employee's assistance.[2]  *See id.* at 211:17-213:2.  The officer described Dawson as "disoriented [and] covered in blood" and upon investigating the alley, observed blood spatters on the ground and one of the walls, along with "bloody handprints" on the cabinet freezer.  *Id.* at 212:22-213:19.  In addition, the officer reviewed the store's external security video, which had captured images of Dawson, McCloud and McAlister.[3]  *Id.* at 216:8-216:25.  Dawson was taken to Grandview Medical Center for treatment, where the officer interviewed him.  *Id.* at 217:12-218:24.

{¶ 9} McAlister and McCloud were arrested later that day.  *See id.* at 227:24-230:19 and 240:18-244:1.  On July 10, 2017, McCloud was indicted on a single count of

---

[2] The officer reported to the store with her partner, who did not testify at McCloud's trial. *See* Trial Tr. 216:11-216:22 and 221:9-222:2.

[3] Dawson and McCloud seem to have been slightly outside of the security system's field of view at the critical moment, though they were seen entering the alley.  *See* Trial Tr. 147:23-150:10.  The security video also showed Dawson lying on the ground, and the United Foods employee finding him and helping him into the store.  *Id.* at 150:1-150:23.

robbery pursuant to R.C. 2911.02(A)(2), and his case proceeded to a trial by jury. Before the reading of the verdict, McCloud offered two motions for acquittal under Crim.R. 29 in quick succession, both of which the trial court overruled. *Id.* at 256:12-256:18, 258:11-259:3 and 264:2-264:16. The jury found McCloud guilty as charged. On November 30, 2017, the trial court filed a termination entry reflecting the verdict and the sentence imposed, and on December 5, 2017, McCloud timely filed his notice of appeal.

## II. Analysis

{¶ 10} We address McCloud's first and second assignments of error together because they are interrelated. For his first assignment of error, McCloud contends that:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL MADE AT THE CONCLUSION OF THE STATE'S CASE AND AT THE CONCLUSION OF THE EVIDENCE ENTERED AT TRIAL ON THE GROUND THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR ROBBERY BEYOND A REASONABLE DOUBT WHEN ONE OF THE ESSENTIAL ELEMENTS CHARGED, NAMELY, THAT APPELLANT HAD ATTEMPTED OR COMMITTED A THEFT OFFENSE AT THE TIME OF THE INCIDENT, HAD NOT BEEN PROVEN BEYOND A REASONABLE DOUBT.

And for his second assignment of error, McCloud contends that:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTIONS FOR ACQUITTAL MADE AT THE CONCLUSION OF THE STATE'S CASE AND AT THE CONCLUSION OF THE EVIDENCE

ENTERED AT TRIAL ON THE GROUND THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR ROBBERY BEYOND A REASONABLE DOUBT WHEN ONE OF THE ESSENTIAL ELEMENTS CHARGED, NAMELY, THAT APPELLANT HAD INFLICTED, ATTEMPTED TO INFLICT, OR THREATENED TO INFLICT PHYSICAL HARM TO ANOTHER, AT THE TIME OF THE INCIDENT, HAD NOT BEEN PROVEN BEYOND A REASONABLE DOUBT.

{¶ 11} McCloud argues that the evidence did not suffice to establish that he committed a theft offense because "the alleged victim, Jermaine Dawson, did not know how much money [he had,] if any." Appellant's Br. 7. Likewise, McCloud argues "that the State did not prove beyond a reasonable doubt that he caused harm" to Dawson. *Id.* Noting that Dawson was "impaired by alcohol and [marijuana]," McCloud posits that Dawson might merely "have fallen against the wall" in the alley, adding that Dawson's "injuries were inconsistent with being hit in the face." *Id.* On the basis of these purported deficiencies in the evidence, McCloud maintains that the trial court should have sustained his motions for acquittal.

{¶ 12} An appellate court reviews a trial court's ruling on a motion under Crim.R. 29 by the same standard applicable to a challenge based on the sufficiency of the evidence. *State v. Scott*, 2018-Ohio-198, ___ N.E.3d ___, ¶ 37 (2d Dist.), citing *State v. Bailey*, 2d Dist. Montgomery No. 27177, 2017-Ohio-2679, ¶ 17. Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is legally sufficient as a matter of law to support the jury['s] verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d

380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based upon the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 13} R.C. 2911.02(A)(2) states that "[n]o person, in attempting or committing a theft offense * * * shall * * * inflict, attempt to inflict, or threaten to inflict physical harm on another." The applicable meaning of the term "theft offense" is provided by R.C. 2913.01(K)(1) and includes violations of R.C. 2913.02(A). Under R.C. 2913.02(A)(1), "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or the services * * * [w]ithout the consent of the owner * * *." *See also* R.C. 2901.01(A)(3) (defining "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration").

{¶ 14} Regarding the first part of McCloud's argument, Dawson reportedly told an officer while being interviewed at Grandview Medical Center that he had had "$70 in his sock and $180 in his back pocket," rather than the $36-38 to which Dawson testified at trial. Trial Tr. 225:13-226:7. The precise amount of money Dawson had in his possession, however, is effectively irrelevant. *Compare* R.C. 2911.02(A) and (C)(2), *with* R.C. 2913.02(A)(1) and (B)(2). Dawson himself admitted that he asked McCloud about the possibility of purchasing marijuana, and he testified without contradiction that he gave McCloud five dollars for food and purchased two cans of beer at the United Foods

store.   Trial Tr. 136:12-136:18, 139:14-141:1, 144:6-146:9, 151:1-151:14, 156:19-156:24 and 164:12-166:5.   Furthermore, the testimony established that McCloud knew Dawson had money in his possession; that McCloud knew where Dawson was keeping the money; and that McCloud was within arm's reach of Dawson immediately before Dawson lost consciousness.   *See id.*

{¶ 15} Presented with this testimony and significant circumstantial evidence, including the security video and the contemporaneous observations of a police officer, the jury could have reasonably concluded that: (1) Dawson had some amount of money on his person before being rendered unconscious; (2) McCloud caused Dawson to become unconscious; and (3) while Dawson was unconscious, McCloud took Dawson's money.   *See, e.g., State v. Hopfer*, 112 Ohio App.3d 521, 558, 679 N.E.2d 321 (2d Dist.1996) (stating that "circumstantial evidence is sufficient to prove the essential elements in a criminal case").   For that matter, having been apprised that Dawson alleged on one occasion prior to trial that he had had $250 in his possession, rather than $36-38, the jury heard his explanation for the inconsistency and, as was within its purview, chose to credit his testimony.   (Citations omitted.)   *State v. Flores-Lopez*, 2017-Ohio-690, 85 N.E.3d 534, ¶ 63 (noting that a jury may believe all, part or none of a witness's testimony).

{¶ 16} Regarding the second part of McCloud's argument, McCloud speculates that Dawson might "have fallen against the wall" in the alley, thereby causing his injuries, and suggests that the "injuries [themselves] were inconsistent with being hit in the face." Appellant's Br. 7.   Speculation aside, the jury heard testimony from Dawson and received circumstantial evidence that, as noted, strongly supported the inference that McCloud

was responsible. Moreover, McCloud's assertion about the nature of Dawson's injuries is founded on a fallacy—the officer who interviewed Dawson at Grandview Medical Center saw "a large laceration on the <u>back</u> of his head." (Emphasis added.) Trial Tr. 217:17-218:4.

{¶ 17} We hold that the State presented sufficient evidence with respect to each of the elements of robbery under R.C. 2911.02(A)(2) to permit the jury to find McCloud guilty beyond a reasonable doubt. McCloud's first and second assignments of error are overruled.

{¶ 18} For his third assignment of error, McCloud contends that:

> THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST
> WEIGHT OF THE EVIDENCE.

{¶ 19} McCloud argues in the alternative that the jury's verdict was against the manifest weight of the evidence. Appellant's Br. 8. Specifically, McCloud faults the jury for overlooking Dawson's "impairment [as the result of his] alcohol and [marijuana consumption]" on the morning of June 22, 2017, and critiques Dawson's reliability as a witness because Dawson did not know "what time * * * the incident took place"; because Dawson "did not know how much money, if any" he had on his person; because Dawson did "not know who, if anybody, hit him"; because Dawson did "not know how he [was] injur[ed]"; and because Dawson did "not know who, if anybody," took his money while he was unconscious. *Id.*

{¶ 20} In a challenge based on the weight of the evidence, an "appellate court acts as a 'thirteenth juror.'" *State v. Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 49 (2d Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

Accordingly, the appellate court must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice warranting a new trial. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. The appellate court "may determine which of several competing inferences suggested by the evidence should be preferred," although it "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." (Citation omitted.) *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 5. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill* at ¶ 8, quoting *Martin* at 175.

**{¶ 21}** Recognizing that the reliability of Dawson's recollections was not without question, the jury heard his testimony and evaluated his reliability in the context of corroborative circumstantial evidence. We may not simply substitute our judgment for that of the jury, especially as it relates to the assessment of a witness's credibility. On our review of the record, we hold that the jury did not clearly lose its way in finding McCloud guilty. McCloud's third assignment of error is overruled.

### III. Conclusion

**{¶ 22}** We hold that the State presented sufficient evidence to prove McCloud's guilt with respect to each of the elements of robbery pursuant to R.C. 2911.02(A)(2), and further, that the jury did not clearly lose its way in finding McCloud guilty. Therefore,

McCloud's assignments of error are overruled, and his conviction is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michael P. Allen
Pamela L. Pinchot
Hon. Erik R. Blaine