[Cite as *State v. Strader*, 2022-Ohio-4470.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2021CA00152 |
| | : | |
| CONRAD STRADER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
Common Pleas, Case No. 2020CR1455

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     December 12, 2022

APPEARANCES:

For Plaintiff-Appellee:          For Defendant-Appellant:

KYLE L. STONE               AARON KOVALCHIK
STARK COUNTY PROSECUTOR     116 Cleveland Ave. NW, Suite 808
                            Canton, OH 44702

TIMOTHY E. YAHNER
110 Central Plaza South, Suite 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Defendant-Appellant Conrad Strader appeals his November 17, 2021 conviction and sentence by the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

**Indictment**

{¶2} On August 19, 2020, the Stark County Grand Jury indicted Defendant-Appellant Conrad Strader on one count of gross sexual imposition, a felony of the third-degree in violation of R.C. 2907.05(A)(4)(C)(2); and one count of voyeurism, a felony of the fifth degree in violation of R.C. 2907.08(C). The indictment alleged the criminal conduct occurred on or about January 1, 2015 through September 24, 2015 when the alleged female victim, born in late September 2003, was a minor and less than 13 years of age. S.S., the alleged female victim, is Strader's daughter.

{¶3} Strader entered a not guilty plea to the charges. The matter was set for a jury trial.

**Motions in Limine**

{¶4}  Strader filed a motion in limine on September 22, 2021 moving the trial court to exclude the testimony of Carrie Schnirring regarding statements made to her by S.S. Ms. Schnirring, a psychology assistant with Lighthouse Family Center, conducted a sexual abuse assessment and trauma evaluation on S.S. in August and September 2019. Strader argued S.S.'s statements to Ms. Schnirring were testimonial in nature and their admission at trial without a prior opportunity for cross-examination would be a violation of the Confrontation Clause. The State responded that Ms. Schnirring was an expert in

childhood trauma. Her evaluation of S.S. was conducted for the purpose of medical diagnosis on behalf of Stark County Children Services, not a forensic interview with S.S. The trial court held a hearing on the motion and by judgment entry filed October 19, 2021, denied Strader's motion in limine.

{¶5}   On October 21, 2021, the State filed a motion in limine to exclude evidence of an alleged incident of sexual contact involving S.S. and a male neighbor while they were both juveniles. Strader had listed the mother of the neighbor child as a potential witness. The State explained in its motion that it believed the witness was going to testify that S.S. told Strader the male neighbor child had unwanted sexual contact with her. Strader then talked to the mother of the male neighbor child. There was no further touching after Strader spoke with the mother and no additional action was taken. This event allegedly occurred during the time the State claimed Strader committed the indicted offenses. The State contended the incident was irrelevant, not proven to be a false allegation, and not admissible at trial. It was going to be used to attack the credibility of S.S. but had no probative value as to the allegations against Strader. The State noted that Strader did not list the male neighbor allegedly involved in the incident as a witness at trial.

{¶6}   Strader did not file a response to the State's October 21, 2021 motion in limine.

**Jury Trial**

{¶7} The jury trial commenced on October 26, 2021. The following facts were adduced at trial.

## The State's Motion in Limine

{¶8}   Prior to jury selection, the trial court heard arguments on the State's motion in limine as to the exclusion of testimony regarding S.S.'s accusation of sexual conduct by the neighbor child. The State reiterated its arguments in the motion in limine to the trial court. Counsel for Strader argued that the mother of the neighbor child was being called as a character witness for the defense. (T. 8). She was also going to provide reputation evidence for S.S.'s honesty. (T. 8). Counsel stated he was going to present evidence that after Strader talked with the mother of the neighbor child about S.S.'s accusation of the neighbor's sexual contact, S.S. told her father that she lied about the sexual contact by the child and wanted to continue playing with the child. (T. 9). The mother's testimony was relevant because it went to the character of the accused, the character of S.S., and that S.S. admitted she lied about an incident that allegedly occurred during the time she claimed the events occurred with her father. (T. 10).

{¶9}   The State responded to Strader's presentation that S.S. denied ever recanting her allegation against the neighbor child. (T. 10-11).

{¶10} The trial court preliminarily granted the motion in limine but stated it would revisit the issue when other testimony was heard. (T. 12). The trial court did not think the evidence was relevant and not permissible under Evid.R. 608 unless the proper foundation was laid. (T. 12). Counsel for Strader stated he would proffer the information on the record. (T. 12).

## The Family

{¶11} Strader and his wife have five biological children, including his eldest daughter, S.S. S.S. was born in late September 2003 and was 18 years old at the time of

trial. At the time of trial, Strader's two sons were 16 and 2 years old and his two other daughters were 15 and 13 years old.

{¶12} The family resided together in a residence located in Canton, Ohio. The three sisters shared a room in their Canton home. Their bedroom had a bunk bed, with a twin-sized bunk bed on top and a full-sized bed on the bottom bunk. There were three bathrooms located in the home. The second-floor bathroom and the basement bathroom both had showers.

{¶13} S.S.'s mother separated from Strader in October 2016 and moved out of the family home. Strader's wife returned to live in the family home in 2018.

{¶14} While Strader and his wife were separated, Strader's two adult sisters assisted him with the children. The family was also involved with the Lighthouse Ministries, a local nonprofit religious organization.

<u>S.S. Testimony Regarding the Alleged Sexual Abuse</u>

{¶15} S.S. testified that her father engaged in four incidents of sexual abuse.

{¶16} The first incident occurred when S.S. was in the seventh grade. In the seventh grade, S.S. said she would have been 11 or 12 years old. S.S. testified that late one night, she was in her bedroom, laying in the bottom bunkbed, and playing with her tablet. She said she was alone in the bed. She was wearing a t-shirt and no bra. Strader came into her bedroom and S.S. pretended to be asleep because it was past her bedtime. Strader got into her bed, put his hands under her shirt, and touched her chest.

{¶17} S.S. further testified that sometimes when she woke up, Strader was in her bedroom. He would occasionally look through the laundry basket in her room. S.S. testified she once found a pair of her uncleaned underpants on the shelf in the bathroom.

{¶18} S.S. testified the second incident occurred when she was in the seventh grade at the end of the school year, when she would have been 12 years old. She had box braids in her hair that did not require washing, but Strader told her that her aunt had told him how to wash her hair and he would assist her. S.S. remembered being in the shower while Strader washed her body and touched her private areas with a rag. He was washing her vaginal area when she said "ow" and then he stopped. He told her to hold the rag to her face, but S.S. did not close her eyes after she covered her face. She faced the showerhead with the rag over her face and her eyes open. Out of the corner of her open eye, she saw Strader holding his phone near his face and pointing it towards her.

{¶19} The second-floor bathroom was notable because there was a circular hole in the wall shared by the bathroom and Strader's bedroom. The hole in the wall was observed by Detective James P. Lile, a juvenile abuse detective with the City of Canton Police Department. The shower in the second-floor bathroom could be viewed through the hole in Strader's bedroom. When the bathroom door was open, the hole could not be seen in the bathroom. A piece of duct tape also covered the hole. S.S.'s siblings were aware of the hole in the bathroom wall, but testified it was covered with duct tape.

{¶20} S.S. testified a third incident occurred during the last half of her eighth-grade year. She was sitting in a green child-sized chair at a desk in the dining room. She was wearing headphones, but nothing was playing on the headphones. Her father kept coming in and out of the dining room. She then heard strange breathing behind her and felt something on the back of her neck. S.S. testified that she was "a hundred percent sure that it was [Strader's] penis." (T. 219). S.S. froze and then she heard Strader walk back

into the living room. She did not turn around, but then she heard heavy breathing coming from the living room.

{¶21} S.S. testified about a fourth incident involving the basement bathroom when she was freshman in high school. Strader testified that he set up video cameras in the house for security purposes. Strader had shown S.S. the application on his cell phone that permitted him to view the video feed from the cameras. S.S. testified that one day when she returned from school, her father informed her they were all to use the basement bathroom to shower to save time. S.S. did not want to use the basement bathroom because it wasn't clean. S.S. said that Strader insisted that she take a shower then, after which she complied. While in the basement bathroom, S.S. observed a video camera facing the shower. She covered the camera. Strader then came down the bathroom and told S.S. to uncover the camera, so he could make sure she was okay. S.S. testified that she felt weird but continued with her shower, with the shower curtain open and the uncovered camera facing the shower.

Prior Accusation Against a Neighbor Child

{¶22} During cross-examination of S.S., counsel for Strader asked her, "Now, you did confide in [K] about another incident that occurred with you and the neighbor boy, didn't you?" (T. 261). The State objected, which the trial court sustained. (T. 261). Counsel next asked S.S., "Did you confide in your dad about another incident with a neighbor boy?" (T. 262). The State objected, which the trial court sustained and asked counsel to approach. (T. 262).

{¶23} While at sidebar, the State argued to the trial court that its motion in limine was not limited to the testimony of the mother of the male neighbor child. (T. 262). It had

requested an order "precluding any testimony about any prior allegations that were never proven false, never investigated with incidents of sexual contact with someone other than Mr. [Strader]." (T. 262). The trial court agreed and stated,

> I think that is the issue; that there is no evidence that these are false allegations. I agree that if there was some evidence that there were false allegations, we'd be having a different conversation, but…

(T. 262). Counsel for Strader described the allegations S.S. made about the neighbor child. The trial court asked how counsel knew the allegations were false. (T. 263). Counsel stated that S.S. admitted afterwards to Strader and the mother of the male neighbor child that her accusation against the child were false. (T. 263). The State said S.S. would deny her accusation was false. (T. 263). The State also noted that Strader did not have the neighbor child listed as a witness. (T. 266). The trial court sustained the State's objection and did not permit counsel for Strader to conduct a cross-examination as to S.S.'s accusation against the neighbor child. (T. 267).

{¶24} Counsel for Strader made a proffer of the evidence he would have presented had the trial court overruled the State's objection. (T. 285). In his proffer, counsel argued that when S.S. was approximately 13 years old, she made an allegation to Strader that the male neighbor child had put his hands down her pants and tried to kiss her. (T. 285). Strader then told the mother of the neighbor child what S.S. had told him. (T. 286). When Strader went back to S.S., she told him she lied about the incident. (T. 286). Counsel argued the information was relevant because she disclosed an alleged sexual assault and then admitted it was not true. (T. 286).

{¶25} The State countered that if the trial court found the evidence relevant, it was required to balance the probative value versus the prejudicial effect, and in this case, the evidence was not probative. (T. 287). Further, if asked, S.S. would state the sexual assault occurred. (T. 287). The trial court ruled:

Okay. And the Court stands by its ruling that the evidence does not demonstrate that this was a false accusation. Moreover, it does appear that sexual activity was involved, which would implicate 2907.05. That's the statute specifically with regard to GSI. Also think it would be, under 403, overly prejudicial and goes to more than just the truthfulness but collateral issues that would confuse the jury. So the Court stands by its ruling with regard to any possible false allegations, again, as to whether or not they were false has not been established.

(T. 289).

Revelation of the Sexual Abuse Allegations

{¶26} S.S. testified that she told a middle school friend about the incidents with her father. She also told a high school friend. In 2019, one of the friends told an adult about S.S.'s allegations. A report was made to Child Protective Services with the Stark County Children Services on June 22, 2019. Det. Lile received a report of the allegations on June 24, 2019. A forensic interview with S.S. was conducted on June 26, 2019. S.S.'s female siblings were forensically interviewed on July 29, 2019. Ms. Hetrick of Children's Services did not find any evidence the two younger girls had been abused or neglected. The siblings did not witness anything inappropriate by their father against S.S.

{¶27} Det. Lile went to the family home with another Canton City detective and Ms. Hetrick. Det. Lile observed the hole in the second-floor bathroom wall. He did not see any evidence of cameras in the basement bathroom. He collected a cell phone from S.S. that used to be Strader's cell phone. The cell phone did not contain a video recording of S.S. There was a photograph on the cell phone of a pair of black underwear with white spots on them. Det. Lile did not interview Strader. He did not interview the friends that S.S. confided in.

{¶28} While the investigation was pending, the Stark County Children Services asked Strader to voluntarily move out of the family home. Strader stayed in the home and in July 2019, S.S.'s family asked an employee of the Lighthouse Ministries to care for S.S. Stark County Job and Family Services filed a complaint for temporary custody of S.S. and protective supervision of S.S.'s siblings. The Lighthouse Ministries' employee was eventually awarded legal custody of S.S. S.S. testified that her father, mother, siblings, or aunts have not contacted her since July 2019.

### Trauma Evaluation

{¶29} From August 2019 to September 2019, S.S. met with Carrie Schnirring, a psychology assistant with the Lighthouse Family Center, for a sexual abuse assessment and trauma evaluation after a referral by the Stark County Children Services. The trial court qualified Ms. Schnirring as an expert. Counsel for Strader did not object to Ms. Schnirring's qualification as an expert.

{¶30} Ms. Schnirring's first session with S.S. was on August 22, 2019 when she was 16 years old. In her first session, Ms. Schnirring noticed that S.S. had a very flat affect, causing Ms. Schnirring to question whether S.S. had depression. She noticed that

S.S. was frustrated about meeting with her. S.S. appeared confused and conflicted. She shared with Ms. Schnirring that she loved her father and had no intention of reporting the sexual abuse, but when the information did come out, S.S. was angry that her father did not "own up to it," and instead made her out to be a liar. (T. 398). This was significant to Ms. Schnirring because it indicated to her that S.S. did not have an ulterior motive for making allegations against her father. After this testimony, counsel for Strader objected on the basis that Ms. Schnirring was expressing her opinion about S.S.'s credibility. (T. 400). The trial court had previously ruled that Ms. Schnirring was not permitted to express her opinion as to the child's credibility; however, the trial court overruled the objection in this instance because Ms. Schnirring was using the information to make a medical diagnosis. (T. 402). The State followed up with Ms. Schnirring, asking her if her role in the assessment was to determine whether the sexual abuse occurred. Ms. Schnirring answered that her role was to look at the disclosure and make clinical decisions about whether the child needed trauma therapy. (T. 402-403).

{¶31} When performing her assessment, Ms. Schnirring looked for idiosyncratic details, contextual details, and sensory motor details of the child's disclosure to assist her in understanding that the child experienced the trauma as opposed to being coached about it. As to each of the incidents, S.S. told Ms. Schnirring in her later sessions specific idiosyncratic details such as that she was playing with her tablet after her bedtime when the first incident occurred. S.S. was afraid of getting in trouble for staying up past her bedtime, so she hid the tablet and pretended to be asleep when her father came into the room.

{¶32} Ms. Schnirring testified about the cost-benefit analysis that child victims of sexual abuse will engage in when determining whether to disclose the abuse. The child will evaluate the pros and cons of disclosure and how disclosure will affect their lives. In the case of S.S., Ms. Schnirring testified her assessment showed that S.S. had engaged in that analysis and determined the cost of disclosing was too high. S.S. was angry at her friends for disclosing the incidents she shared with them and after their disclosure, the events that S.S. was afraid of occurred even though she wasn't the one who told. S.S. maintained that the incidents occurred even after the negative repercussions occurred such as that S.S. was placed in foster care by her family.

{¶33} Ms. Schnirring diagnosed S.S. with post-traumatic stress disorder and recommended monitoring her for depression. She recommended counseling for S.S. and specific trauma therapy.

Strader's Testimony

{¶34} After the trial court denied the defense's Crim.R. 29 motion, Strader presented his case. Strader testified in his own defense. At the time of the hearing, Strader was 37 years old.

{¶35} He testified that when his wife left in October 2016, his sisters helped with the children. His wife returned to the home in 2018. Strader testified that he accidently created the hole in the bathroom wall in 2017 when he was moving bedroom furniture after his wife left. Strader's sister testified there was a hole in the bathroom wall in 2016. Strader denied ever using the hole in the wall to spy on S.S. while she used the second-floor bathroom.

{¶36} Strader described his daughters' bedroom with the top bunk and full-sized bed in the bottom bunk. The youngest child was supposed to sleep in the top bunk, but it was too hot in the top bunk, even with the use of fans and an air conditioner. The three girls therefore slept together in the bottom bunk. He stated that he checked on his children when they were sleeping because once, one of the children had stopped breathing. He denied ever coming into bed with S.S. and placing his hand under her shirt while she was sleeping. He said there was no room in the bed with the three girls.

{¶37} Strader admitted there were cameras in the home for security purposes, but he denied there was a camera in the basement bathroom. He described the downstairs bathroom as unusable due to mold. He testified that S.S.'s allegation about the incident in the basement bathroom was not true.

{¶38} As to the incident in the dining room, Strader testified that he was too short and overweight to lay his penis on S.S.'s neck while she was sitting in the child-sized chair.

{¶39} Strader did not offer any testimony as to the incident that allegedly occurred in the second-floor bathroom.

### Character Witnesses

{¶1} The defense offered the testimony of S.S.'s siblings, wife, Strader's adult sisters, and friends. Family members testified that the young sisters often slept in the bottom bunk together. One daughter testified that she was a light sleeper and would have woken up if she felt her father getting into the bed. When S.S. was in seventh grade, her two sisters were in elementary school and approximately seven and nine years old.

{¶2} The witnesses testified that they did not observe anything unusual about S.S.'s behavior when the incidents allegedly occurred. S.S. did not tell them about the incidents with Strader.

**Jury Verdict**

{¶3} At the conclusion of the defense's case, Strader renewed his motion for dismissal for Crim.R. 29. The trial court denied the motion.

{¶4} On October 29, 2021, the jury found Strader guilty on one count of gross sexual imposition and one count of voyeurism. The trial court deferred sentencing to November 5, 2021.

**Sentencing**

{¶5} The trial court conducted the sentencing hearing on November 5, 2021. Via sentencing entry filed on November 17, 2021, the trial court sentenced Strader to a prison term of 36 months on the charge of gross sexual imposition and a prison term of 12 months on the charge of voyeurism. The sentences were ordered to be served concurrently.

{¶6}  It is from this judgment that Strader now appeals.

**ASSIGNMENTS OF ERROR**

{¶7}  Strader raises four Assignments of Error:

{¶8} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT REFUSED TO LET APPELLANT CROSS EXAMINE THE ALLEGED VICTIM ABOUT PRIOR FALSE ALLEGATIONS IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES.

{¶9} "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ADMITTING CARRIE SCHNIRRING'S TESTIMONY AND EXPERT OPINION INTO EVIDENCE.

{¶10} "III. THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL FOR THE CHARGE OF VOYEURISM AS THERE WAS NOT SUFFICIENT EVIDENCE WITH REGARD TO ALL THE ESSENTIAL ELEMENTS OF THE CHARGE.

{¶11} "IV. APPELLANT'S CONVICTIONS OF GROSS SEXUAL IMPOSITION AND VOYEURISM WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

**I.**

{¶12} In his first Assignment of Error, Strader argues the trial court abused its discretion when it sustained the State's objection to his cross-examination of S.S. regarding her alleged prior false allegation of sexual assault involving the male neighbor child. We disagree and find the trial court did not err.

{¶13} A trial court has discretion to determine whether a witness may be asked on cross examination about specific acts of conduct that are "clearly probative of truthfulness or untruthfulness." Evid.R. 608(B); *State v. Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 22 (2nd Dist.), citing *State v. Chaney*, 169 App.3d 246, 2006-Ohio-5288, 862 N.E.2d 559, ¶ 5 (3rd Dist.). The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶14} In his first Assignment of Error, Strader relies on the holding of the Ohio Supreme Court in *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992), which held a defendant may cross examine a rape victim about a prior false accusation of rape, under Evid.R. 608(B), if the accusation does not involve any "sexual activity." *State v. Hall*, 2nd Dist. Montgomery No. 25794, 2014-Ohio-2094, ¶ 12. Under the rape-shield provision of R.C. 2907.02(D), evidence of "sexual activity" is prohibited. In this case, Strader was charged with gross sexual imposition under R.C. 2907.05. R.C. 2907.05(E) and (F) contain identical provisions as the rape-shield provisions of R.C. 2907.02(D) and (E):

(E) Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in

the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

(F) Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.

{¶15} In *Boggs*, the Supreme Court balanced the objective of the rape-shield provision to protect the privacy of a rape victim's prior sexual activity with the legitimate defense strategy to test the credibility of a rape victim. *State v. Jackson, supra* at ¶ 23. In order to balance both objectives, *Boggs* requires an in camera hearing before cross examination of a rape victim as to prior false accusations may proceed: "Where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an in camera hearing to ascertain whether sexual activity was involved. * * *." *Boggs, supra* at paragraph two of the syllabus. The trial court must determine if the prior accusations are unfounded and, if so, whether the conduct involves sexual activity that is inadmissible pursuant to the rape shield law. *State v. Jackson, supra*, ¶ 23 citing *Boggs, supra*, paragraph two of the syllabus. The burden is on the defense to demonstrate the accusations were totally false and unfounded. *Boggs, supra* at 423.

{¶16} While Strader contends on appeal that the trial court failed to comply with *Boggs* when it did not hold an in camera hearing, the record in this case shows that Strader did not request the trial court to engage in the *Boggs* procedures or bring the

matter to the trial court's attention prior to Strader's cross examination of S.S. as to the alleged prior false accusation. Accordingly, we review Strader's first Assignment of Error under the plain error standard.

{¶17} The State and Strader were aware pre-trial of S.S.'s prior accusation of sexual assault by the neighbor child. Strader listed the mother of the neighbor child as a defense witness. However, it was the State, not Strader, that filed a pre-trial motion in limine to prohibit the admission of S.S.'s prior accusation. When the trial court heard the State's motion in limine, counsel for Strader argued S.S.'s prior false accusation of sexual assault was admissible as to the issue of her credibility. Strader did not present any evidence during the hearing on the State's motion in limine. At trial, during cross examination, counsel for Strader did not ask S.S. if she made a prior false accusation but asked if she confided with her father about another incident with a neighbor boy. (T. 261-262). During sidebar after the State's objection and during his proffer, the defense repeated his argument that S.S.'s alleged false accusation went to her credibility. These all raise the specter of *Boggs,* but the record is clear -- there was no evidence that S.S.'s accusation against the neighbor child was totally unfounded.

{¶18} The trial court ruled that there was no evidence that S.S.'s allegation was false and therefore, the evidence of conduct involving sexual activity was inadmissible. The trial court repeatedly noted that lack of evidence when it sustained the State's objections:

> I think that is the issue; that there is no evidence that these are false
> allegations. I agree that if there was some evidence that there were false
> allegations, we'd be having a different conversation, but…

* * *

Okay. And the Court stands by its ruling that the evidence does not

demonstrate that this was a false accusation. * * * So the Court stands by

its ruling with regard to any possible false allegations, again, as to whether

or not they were false has not been established.

(T. 262, 289).

{¶19} Under the plain error rule, "[p]lain errors or defects affecting substantial

rights may be noticed although they were not brought to the attention of the court." Crim.R.

52(B). The rule places the following limitations on a reviewing court's determination to

correct an error despite the absence of timely objections at trial: (1) "there must be an

error, i.e. a deviation from a legal rule," (2) "the error must be plain," that is an error that

constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have

affected "substantial rights" such that "the trial court's error must have affected the

outcome of the trial." *State v. Wood*, 5th Dist. Knox No. 20CA000010, 2020-Ohio-4251,

2020 WL 5092841, ¶ 18 citing *State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-

Ohio-1688, 2009 WL 943968, ¶ 89, citing *State v. Morales*, 10th Dist. Franklin Nos. 03-

AP-318, 2004-Ohio-3391, 2004 WL 1446117, ¶ 19.

{¶20} In this case, we find it was not plain error for the trial court to grant the

State's objection and prohibit Strader's cross examination of S.S. as to her prior

accusation. We find Strader has failed to establish there was an error by the trial court

and that alleged error was an obvious defect in the trial court proceedings. The *Boggs*

court held that the court has the discretion to determine whether to allow cross

examination under Evid.R. 608(B) concerning prior false allegations of sexual

misconduct. *State v. King*, 5th Dist. Fairfield No. 2008 CA 00045, 2009-Ohio-5984, ¶ 29 citing *Boggs, supra* at 421. The trial court did not abuse its discretion under Evid.R. 608(B) to prohibit cross examination on the issue.

{¶21} Strader's first Assignment of Error is overruled.

**II.**

{¶22} Strader contends in his second Assignment of Error that the trial court committed prejudicial error by admitting the testimony of Carrie Schnirring. He argues Ms. Schnirring's testimony was inadmissible as expert testimony and only served to bolster the credibility of S.S.

{¶23} We note that Strader did not object to the trial court's qualification of Ms. Schnirring as an expert witness.

{¶24} "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *State v. Romy*, 5th Dist. No. 2020 CA 00066, 2021-Ohio-501, 168 N.E.3d 86, 2021 WL 734758, ¶ 49 citing *Rigby v. Lake County*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion Id. The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶25} An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. *State v. Romy*, 5th Dist. No. 2020 CA 00066, 2021-Ohio-501, 168 N.E.3d 86, 2021 WL 734758, ¶ 50 citing *State v. Boston*, 46 Ohio St.3d 108,

545 N.E.2d 1220 (1989). However, there is a difference "between expert testimony that a child witness is telling the truth and evidence which bolsters a child credibility." *State v. Stowers*, 81 Ohio St.3d 260, 262-263, 690 N.E.2d 881 (1998). Thus, an expert can testify that a child's behavior is consistent with the behavior of other children who have been sexually assaulted." *Id.*

{¶26} Ms. Schnirring did not testify as to the veracity of S.S.'s statements. Ms. Schnirring testified that her role was not to determine if the sexual abuse occurred; it was her role to determine if the child required trauma therapy. (T. 403). Further, Ms. Schnirring's testimony as an expert witness was offered to show that S.S. was a victim of sex abuse because her behavior, such as the cost-benefit analysis a child will engage in on whether to disclose the abuse, was common in children who have been abused. (T. 411). *See State v. Romy,* 5th Dist. No. 2020 CA 00066, 2021-Ohio-501, 168 N.E.3d 86, 2021 WL 734758, ¶ 52.

{¶27} Strader's second Assignment of Error is overruled.

### III. and IV.

{¶28} In Strader's third Assignment of Error, he argues his conviction for voyeurism was against the sufficiency of the evidence. We also address his fourth Assignment of Error in part where he argues his conviction for voyeurism was against the manifest weight of the evidence.

{¶29} The trial court denied Strader's Crim.R. 29 motion for acquittal of the charge of voyeurism. The appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. *State v. Henderson*, 5th Dist. Richland No. 17CA104, 2019-Ohio-4958, ¶ 15 citing *State v. Larry*,

5th Dist. Holmes No. 15CA011, 2016–Ohio–829, ¶ 20 citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 1995–Ohio–104.

{¶30} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶31} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶32} Strader was convicted of voyeurism, in violation of R.C. 2907.08(C), which states: "No person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another to videotape, film, photograph, otherwise record, or spy or eavesdrop upon the other person in a state of nudity if the other person is a minor." In his appellate brief, Strader argues the State failed to establish beyond a reasonable doubt that Strader videotaped, filmed, photographed, or otherwise recorded S.S. in a state of nudity.

{¶33} Det. Lile did not discover evidence of a recording or photograph of S.S. in a stated of nudity on the cell phone provided by S.S. that was previously owned by Strader. When Det. Lile investigated the home, he did not find a camera in the basement bathroom.

{¶34} The analysis of whether a rational trier of fact could have found the essential elements of voyeurism does not stop, however, if there is not a recording or photograph. The statute reads in total that "no person * * * shall videotape, film, photograph, otherwise record, or spy, or eavesdrop on another person." R.C. 2907.08(C). There was testimony as to the elements of R.C. 2907.08(C) beyond that of a recording or photograph.

{¶35} S.S. testified there was a circular hole in between Strader's bedroom wall and the second-floor bathroom. The hole was covered with a piece of duct tape and when uncovered, a person looking through the hole could see into the shower of the second-floor bathroom. Multiple witnesses for the State and defense testified as to the existence of the circular hole in the bathroom wall. Strader did not dispute the existence of the hole in the wall. He testified that the hole was accidently created when he was moving bedroom furniture and denied observing S.S. through the hole in the wall.

{¶36} S.S. testified that when Strader bathed her in the second-floor bathroom and told her to place a rag over her face while she was nude, she saw Strader pointing his cell phone at her.

{¶37} S.S. testified that when she covered the camera in the basement bathroom where she was showering upon Strader's direction, he came into the bathroom and told her to uncover the camera. Strader admitted there were cameras in the home for security purposes. S.S. had seen the application on his cell phone connected to the cameras.

{¶38} This case came down to the credibility of the State's witnesses and Strader's witnesses. "When there is a conflict in the testimony of witnesses, it is for the trier of fact to determine the weight and credibility to be given to such evidence." *State v. York*, 3rd Dist. Union No. 14-21-14, 2022-Ohio-1626, 2022 WL 1538021, ¶ 87 quoting *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29. The jury may "take note of any inconsistencies in the testimony and resolve them accordingly, believing all, part, or none of each witness's testimony." *State v. Lark*, 12th Dist. Fayette No. CA2018-03-004, 2018-Ohio-4940, ¶ 29. Ultimately, " 'a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version.' " *State v. Smith*, 3rd Dist. Marion No. 9-20-50, 2021-Ohio-3404, ¶ 26, quoting *State v. Ferrell*, 10th Dist. Franklin No. 19AP-816, 165 N.E.3d 743, 2020-Ohio-6879, ¶ 59.

{¶39} Upon this record, considering the evidence in a light most favorable to the State, there was sufficient evidence that any reasonable trier of fact could have found the essential elements of voyeurism were proven beyond a reasonable doubt. The jury did

not lose its way to create a manifest miscarriage of justice when it found Strader guilty of voyeurism.

{¶40} Strader's third and fourth Assignments of Error (as to voyeurism) are overruled.

**IV.**

{¶41} In his final Assignment of Error, Strader contends his convictions for gross sexual imposition and voyeurism are against the manifest weight of the evidence. We addressed Strader's argument as to his conviction for voyeurism in the third Assignment of Error. In this Assignment of Error, we address only his conviction for gross sexual imposition.

{¶42} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶43} The case essentially came down to a credibility determination between the State's witnesses and Strader's witnesses. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Frye*, 5th Dist. Richland No. 17CA5, 2017-Ohio-7733, 2017 WL 4176953, ¶ 47 quoting *State v. Johnson*, 5th Dist. Stark No. 2014CA00189, 2015–Ohio–3113, 41 N.E.3d 104, ¶ 61, citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). The jury need not believe all of a witness' testimony but may accept only portions of it as true. *Id.*

{¶44} Strader contends his conviction for gross sexual imposition was not supported by manifest weight of the evidence. Pursuant to R.C. 2907.05(A)(4), the jury was required to find beyond a reasonable doubt that, "No person shall have sexual contact with another, not the spouse of the offender; * * * when: The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person." While Strader reviews each incident alleged by S.S. as unsupported by the manifest weight of the evidence, the State notes that Strader was charged with one count of gross sexual imposition based on his course of conduct. Evidence from each incident may establish an element of the one charge.

Bedroom Incident

{¶45} Strader first argues there was contradictory evidence to demonstrate the bedroom incident did not occur as S.S. described. S.S. testified that when Strader came into the room and touched her under her shirt, she was laying alone in the bottom bunk. Strader points to the testimony of his witnesses, including his two younger daughters, who testified that the three girls always slept together in the bottom bunk. The two younger sisters testified that they did not recall their father coming into their bed when S.S. alleged, and one testified she was a light sleeper and would have woken up. S.S. testified that she was 12 years old when the bedroom incident occurred. At the trial in 2021, S.S. was 18 years old, and her sisters were 15 and 13 years old. Accordingly, when S.S. was 12 years old, her sisters were 9 and 7 years old. The younger sisters did not testify the bedroom incident did not occur. Their testimony was that the three sisters slept in the same bed, they were not aware of the incident, and when one sister was elementary-school aged, she was a light sleeper. That the siblings and defense witnesses did not see any signs of abuse does not mean that the abuse was did not happen. As the factfinder, the jury was free to give the sisters' testimony the weight it deemed appropriate.

Second-Floor Bathroom and Dining Room Incidents

{¶46} As to the incidents in the upstairs bathroom and dining room, Strader disputes that S.S. was under the age of 13 when they occurred. He does not dispute S.S.'s recollection as to her age when the bedroom incident occurred.

{¶47} S.S. was born in late September 2003. S.S. testified she was in the seventh grade or 12 years old when Strader touched her in the second-floor bathroom. (T. 212). At the start of the seventh grade, S.S. would have been 11 years old and turning 12 years

old in September. (T. 227). S.S. testified that she was in eighth grade when the dining room incident occurred. (T. 217). Based on her birth date, at the start of eighth grade, S.S. would have been 12 years old and turning 13 years old in September. (T. 227).

{¶48} As stated above, the State charged Strader with one count of gross sexual imposition based on a course of conduct from January 1, 2015 through September 24, 2015. S.S. testified that sexual contact with Strader occurred during January 1, 2015 to September 24, 2015, when she was in seventh grade and 11 or 12 years old. The jury clearly believed S.S.'s testimony over that of the defense witnesses.

{¶49} There is nothing in the record that leads us to believe that this is one of those exceptional cases in which the evidence weighs heavily against the conviction of gross sexual imposition.

{¶50} Strader's fourth Assignment of Error is overruled.

## CONCLUSION

{¶51} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, John, J., concur.